774 A.2d 441

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. EDWARD BRIMS, DEFENDANT–APPELLANT.

Argued November 28, 2000—Decided June 19, 2001.

298

*Susan C. Green*, Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney).

*Annmarie Cozzi*, Assistant Prosecutor, argued the cause for respondent (*William H. Schmidt*, Bergen County Prosecutor, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The primary issues raised in this appeal, which involves a conviction for second-degree possession of a firearm for an unlawful purpose, are whether the jury was properly instructed on, and whether the State sustained its burden of proving, defendant's specific unlawful purpose for possessing a weapon. The trial court and the Appellate Division concluded that there was no plain error. We agree and affirm.

## I.

In his first trial, defendant was convicted of possession of a firearm without a firearms identification card in violation of *N.J.S.A.* 2C:39–5c(1); possession of a semi-automatic loaded rifle in violation of *N.J.S.A.* 2C:39–5c(2); possession of cocaine in violation of *N.J.S.A.* 2C:35–10a(1); possession of a firearm by a previously convicted felon in violation of *N.J.S.A.* 2C:39–7b; and possession of a firearm for an unlawful purpose in violation of *N.J.S.A.* 2C:39–4a. The Appellate Division affirmed all of the convictions with the exception of possession of the firearm for an unlawful purpose. That conviction was reversed because the trial court had not instructed the jury on the alleged specific unlawful purpose. In his second trial, defendant was again convicted of possessing a weapon for an unlawful purpose and the Appellate Division affirmed. This appeal focuses only on that conviction.

On Friday, September 25, 1992, at approximately 8:15 p.m., two men were observed in a municipal parking lot in Leonia, New Jersey, leaning into a car, with all four doors open, but with the interior car light off. A local jewelry store owner contacted the police to report that there was "suspicious activity going on in the municipal lot." At the time the two men were observed, several business, including a liquor store, a pharmacy, and a supermarket, were open in the area adjoining the parking lot. There were also other cars parked in the lot. The parking lot was located near a residential area.

When the police arrived, they asked the two men what they were doing, and the men explained that they were cleaning out the car. The officers noted that there were no trash receptacles in the immediate area. The two men, who were later identified as defendant Edward Brims and co-defendant Ernest Brownlee, were directed to place their hands on one of the police cars while an officer looked into the back seat of their car. The officer observed a pair of black gloves, several pairs of women's stockings, a black hair net, and several empty bags and soda bottles in the back seat. In addition, the officer saw the stock of a weapon

protruding from under the driver's seat. The firearm was a .22 Marlin rifle with a sawed-off stock. There were nine rounds of ammunition in the rifle, including one round in the chamber.

At the time of his arrest, defendant was wearing a warm-up suit with two T-shirts underneath. Defendant was also wearing white sweat socks with black nylon-type socks over them. Brownlee had white gloves and one pair of nylons in his back pocket. One of the nylons found on the back seat of the car was stretched out and had a hole in it. At trial, one of the responding police officers testified that his experience has shown that people who commit crimes use gloves to disguise their hands and to prevent fingerprints, and place nylons over their heads to distort their faces. That officer also testified that people saw off the stocks of guns to make them easier to conceal under clothing.

During the retrial, the State argued that defendant's specific unlawful purpose for possessing the gun was to commit a robbery. The trial court decided that it would instruct the jury to consider burglary as an additional unlawful purpose. At the end of the State's case, defendant made a motion to dismiss, arguing that based on the evidence presented, the jury would be required to speculate about what defendant's unlawful purpose was. The trial court denied the motion.

The trial court instructed the jury that defendant's alleged unlawful purpose was to commit a burglary or robbery with the gun. There was no objection to that jury instruction. Defendant again was convicted of possession of a weapon for an unlawful purpose. Defendant's motion for a judgment of acquittal notwithstanding the jury verdict was denied. He was sentenced to an extended term of fifteen years with a five-year term of parole ineligibility.

The Appellate Division affirmed defendant's conviction in an unpublished opinion. The Appellate Division concluded that the evidence was sufficient to support an inference of an unlawful purpose. The Appellate Division also determined that, although it would have been appropriate for the trial court to have informed

the jury that the defense was that defendant was cleaning out the car, the failure to do so did not amount to plain error. We granted defendant's petition for certification, 164 *N.J.* 557, 753 *A.*2d 1150 (2000), and now affirm.

## II.

■ Defendant argues that the State failed to meet its burden of proving the specific unlawful purpose for which he possessed the rifle. He contends that the State's failure to sustain its burden of proof was compounded by the trial court's failure to inform the jury in its charge that defendant's asserted purpose for being in the parking lot was to clean out the car. The State counters that the jury instructions were clear and adequate, and that it met its burden of establishing under the totality of the circumstances that the unlawful purpose was to use the rifle to commit a robbery or burglary.

■ The statute under which defendant was convicted provides: "Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree." *N.J.S.A.* 2C:39–4a. A conviction for possession of a gun for an unlawful purpose requires proof of four elements:

(1) the object possessed was a "firearm"within the meaning of *N.J.S.A.* 2C:39–1(f); (2) the firearm was possessed by defendant as defined in *N.J.S.A.* 2C:2–1c; (3) the defendant's purpose in possessing the firearm was to use it against the person or property of another; and (4) the defendant intended to use the firearm in a manner that was unlawful.

[*State v. Diaz,* 144 *N.J.* 628, 635, 677 *A.*2d 1120 (1996).]

■ The unlawful possession of a weapon under *N.J.S.A.* 2C:39–4a is "an inchoate offense in the sense that it seeks to prevent incipient crime by prohibiting the commission of some act, however equivocal[,] ... when such conduct is accompanied by criminal intent." *State v. Harmon,* 104 *N.J.* 189, 203–04, 516 *A.*2d 1047 (1986) (analogizing to *State v. Zito,* 54 *N.J.* 206, 215, 254 *A.*2d 769 (1969), which explained that "presence at a place for an unlawful purpose" is a status crime that "seeks to head off the

commission of crime ... not yet pressed to the stage of an attempt' "). An attempt to commit a robbery or a burglary is cognizable under the New Jersey Code of Criminal Justice. *N.J.S.A.* 2C:5–1; *N.J.S.A.* 2C:15–1; *N.J.S.A.* 2C:18–2; *State v. Farrad*, 164 *N.J.* 247, 251, 753 *A.*2d 648 (2000); *State v. Jenkins*, 299 *N.J.Super.* 61, 63, 690 *A.*2d 643 (App.Div.1997). The legislative objective of *N.J.S.A.* 2C:39–4a, however, is to punish someone for possessing a firearm for an unlawful purpose before the conduct escalates to the stage of an attempt. Accordingly, the focus is on a defendant's purpose for possessing a weapon, not the possession itself or the actual use, and "a conviction based on the use of the weapon is not a required precondition to a conviction for the possessory offense." *Diaz, supra*, 144 *N.J.* at 635–36, 677 *A.*2d 1120.

■■■■ Proof of the fourth element of the offense, namely that defendant intended to use the firearm in a manner that was unlawful, requires "an identification of the unlawful purpose or purposes suggested by the evidence." *State v. Villar*, 150 *N.J.* 503, 511, 696 *A.*2d 674 (1997). Here, robbery and burglary were identified as the unlawful purposes. The mental state required for possession of a firearm with a purpose to use it against the person or property of another for an identified unlawful purpose is satisfied "if it is his [the defendant's] conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he [or she] ... believes or hopes that they exist." *N.J.S.A.* 2C:2–2b(1). The "purpose to use a weapon unlawfully may be inferred from the [facts and] circumstances" presented at trial. *Villar, supra*, 150 *N.J.* at 510, 696 *A.*2d 674.

In this case, the State presented ample evidence from which the jury could have inferred defendant's unlawful purpose for possessing the rifle. Defendant was found rummaging through a rental car in a parking lot near several stores and residences under highly suspicious circumstances. In the backseat of the car, where defendant was leaning, the police found gloves, stockings, and a hair net. Under the front seat was a fully loaded sawed-off

rifle with a bullet in the chamber. Defendant was wearing two layers of clothing in September, including a pair of black nylon socks over his white athletic socks, and co-defendant Brownlee had gloves and knee-high stockings in his pocket. There was testimony that the stocking with the hole in it could be used to conceal one's facial features and that the white gloves could be used to avoid leaving fingerprints. The fact that the rifle was sawed off made it easier to conceal beneath clothing. There were businesses still open and customers of those establishments used the parking lot. All that evidence taken together satisfied the requirements of *State v. Reyes*, 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967), for submission of the case to the jury.

Although defendant asserted that his purpose for being in the parking lot was to clean out his rented car, the jury was free to infer that his purpose in possessing the firearm, under those facts and circumstances, was to use it in connection with a robbery or burglary, both of which are unlawful purposes. Indeed, defendant never asserted that he possessed the sawed-off rifle for a lawful purpose. His defense was that he was cleaning out the rented car, which is not inconsistent with possessing the firearm to commit a robbery or burglary in the parking lot or nearby. Finally, the jury was also informed that there were no nearby receptacles for depositing the waste that defendant was allegedly cleaning from the vehicle.

In contrast to the dissent's suggestion, the State was only required to prove that defendant's unlawful purpose was to commit a robbery or a burglary; the State was not obligated to prove the exact details of the intended crime, such as when it would occur or the identity of the person or property targeted. *See State v. Petties*, 139 *N.J.* 310, 316, 654 *A.*2d 979 (1995). The State met its burden in this case. Moreover, the jury's verdict was based on sufficient credible evidence and does not represent a miscarriage of justice under *Rule* 2:10–1.

## III.

Next, we focus on the jury charge. Defendant argues that the trial court's jury instructions on possession of a weapon for an unlawful purpose allowed the jury to speculate about his alleged unlawful purpose for possessing the rifle and failed to inform the jury that his alleged purpose for being in the parking lot was to clean out the rented car. Because defendant did not object to the jury instructions at trial, his conviction may be reversed only if there was plain error—an error that was "clearly capable of producing an unjust result," *R.* 2:10–2, such that a reasonable doubt is raised "as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971).

The jury was instructed as follows:

The mental element of purpose to use a firearm unlawfully requires that you find the defendant[ ] possessed a firearm with the conscious object, design, with a specific intent to use it against the person or property of another in an unlawful manner as charged in the indictment and not for some other purpose. In this case, the State contends that the defendant['s] unlawful purpose in possessing the firearm was burglary or robbery. You must not consider your own notions of the unlawfulness of some other undescribed purpose of the defendant[ ], but rather you must consider whether the State has proven the specific unlawful purpose charged. The State need not prove which specific completed crime the defendant[ ] intended to commit using the firearm. The unlawful purpose alleged by the State may be inferred from all that was said or done and from all of the surrounding circumstances of this case.

We are convinced that the charge satisfies the requirement that the jury " 'may not convict [under *N.J.S.A.* 2C:39–4a] based on their own notion of the unlawfulness of some other undescribed purpose.' " *Villar, supra,* 150 *N.J.* at 511, 696 *A.*2d 674 (quoting *State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (1989)). The jury charge both provided the jury with the alleged specific unlawful purposes it was permitted to consider—burglary and robbery—and stated that the jury was prohibited from convicting defendant based on any other unlawful purpose. Hence, the jury instruction, when considered as a whole, "guide[d] the jury in its determination of the unlawful purposes alleged." *Petties, supra,* 139 *N.J.* at 319, 654 *A.*2d 979.

We find no basis on which to conclude that the charge was capable of misleading the jury. Nor did the trial judge commit plain error by failing to comment in the charge on defendant's assertion that he was present in the parking lot to clean out the rental car. That defense does not suggest that the gun was possessed for a lawful purpose. Similarly, defendant's asserted purpose for his presence in the parking lot does not negate the mental state required for the offense. In other words, presence in the parking lot to clean out the rented car does not negate the State's contention that his presence was for the purpose of committing a robbery or burglary.

Trial courts have broad discretion when commenting on the evidence during jury instruction. *State v. Robinson*, 165 *N.J.* 32, 45, 754 *A.*2d 1153 (2000). Although the trial court could reasonably have exercised that discretion in favor of including defendant's assertion that he was cleaning out the rented car, the failure to do so does not rise to the level of plain error. Defendant's counsel approved the charge at a pre-charge conference. More importantly, we are entirely satisfied that the jury understood that defendant's theory of the case was that he and Brownlee were merely cleaning garbage out of the rental car, garbage that included gloves, stockings, and a hairnet, as well as empty bags and soda bottles, and that they allegedly had no plan or purpose to use the gun in any unlawful manner. The charge when viewed as a whole made it clear that if defendant's presence in the parking lot was only to clean out the rental car, and not to commit a robbery or burglary, the jury's obligation was to return a verdict of not guilty. Failure to include the defense theory in the jury charge does not raise a reasonable doubt that the jury would have reached a different result had the court included defendant's theory in its charge. *See Macon, supra*, 57 *N.J.* at 336, 273 *A.*2d 1.

## IV.

We affirm the judgment of the Appellate Division.

STEIN, J., dissenting.

In this appeal defendant challenges only the validity of his conviction, at a retrial, of second-degree possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–21. Defendant does not contest his other convictions at his first trial for possession of a firearm without a firearm's identification card (*N.J.S.A.* 2C:39–5(c)), possession of a semi-automatic rifle (*N.J.S.A.* 2C:30–5(c)(2)), possession of a controlled dangerous substance (CDS) (*N.J.S.A.* 2C:35–10(a)(1)), and possession of a weapon by a convicted felon (*N.J.S.A.* 2C:37–7(b)). At his original trial, at which defendant also was convicted of possession of a weapon for an unlawful purpose, the trial court omitted to instruct the jury concerning the unlawful purpose asserted by the State, although the prosecutor argued that defendant's purpose was to commit an aggravated assault or robbery. That conviction was reversed by the Appellate Division in an unpublished opinion because of the trial court's failure to "guide the jury in its determination of the unlawful purposes alleged." *State v. Petties*, 139 *N.J.* 310, 319, 654 *A.*2d 979 (1995). At the retrial the State changed its position and asserted that defendant's unlawful purpose was to commit a robbery or burglary, the trial court so instructed the jury, and the Appellate Division affirmed the conviction in an unpublished opinion.

I would reverse that conviction. Unlike the vast majority of convictions for violation of *N.J.S.A.* 2C:39–4, in which defendants also plead guilty to or are convicted of an underlying offense that serves as the predicate for the possession of an unlawful purpose conviction, defendant's predicate criminal purpose was a matter of rank speculation, so much so that the State changed its theory concerning defendant's criminal purpose between the first trial and the retrial. No reported decision has sustained a conviction under *N.J.S.A.* 2C:39–4 on proofs as weak as these. In my view, defendant's prosecution for that offense was the result of unnecessary prosecutorial overcharging, particularly since defendant's possession of the weapon in question, as well as his possession of

CDS, resulted in several other sustainable convictions that would have resulted in a substantial prison sentence. Because the trial court committed error in denying defendant's motion to dismiss at the close of the State's case, I would reverse defendant's conviction pursuant to *N.J.S.A.* 2C:39–4.

I

The Court's confidence in the reliability of defendant's conviction under *N.J.S.A.* 2C:39–4 is not likely to be enhanced by the fact that the Leonia police officer's investigation of defendant was prompted by an unfounded complaint that defendant and his co-defendant were burglarizing defendant's own rental car.

On September 25, 1992, Robert Paccico, a former Mayor of Leonia, left his jewelry store at about 8:15 p.m. and observed defendant and co-defendant Ernest Brownlee, both of whom are African–American, leaning into a car parked lawfully in a municipal parking lot in Leonia. The lot had a capacity of 130 cars and at the time was about forty to fifty percent full. Paccico observed that all four car doors were open and the interior lights were not on. As Paccico approached the car, defendant took a few steps toward him and shouted "Hey, man" which gave Paccico a "very uneasy feeling." Paccico quickly entered his car and drove to the nearby police station where he reported to Corporal Carmine Cross, whom he knew, that two black men were burglarizing or stealing a car or car radio in the municipal lot.

Paccico and Cross then returned to the parking lot. Corporal Cross testified that as he drove into the parking lot he drew his weapon and kept it at his side. He saw defendant leaning into the car at the rear driver's side. Cross ordered defendant to step back from the car and asked what he was doing. Brims replied that he was cleaning out his car. It was undisputed that the back seat of the car contained empty bags and several plastic soda bottles. Although there were several trash receptacles in the parking lot, none were in the immediate vicinity of defendant's own car. Cross then noticed Brownlee standing behind the other

open back door and ordered both men to place their hands on the car. Brims did not comply immediately, and "wanted to know why we have to do this and what's going on." Defendant was wearing a Chicago Bulls warm-up suit over two T-shirts, one red and one black, and two pairs of socks. Cross then asked defendant who owned the car. Brims replied that it was a rental car, and handed Cross his driver's license and a Thrifty Rent–a–Car agreement bearing the name of defendant's sister as well as defendant's signature, address, license number, and date of birth.

Concerning the car rental agreement, which the Leonia police officers did not preserve and produce during discovery, Corporal Cross testified at the suppression hearing that it was not in defendant's name but "was made out in a woman's name." That testimony supported Cross' contention that he still believed the car might be stolen when he later was looking inside the car and observed the sawed-off shotgun. Prior to trial, Brims produced the rental agreement which did include his signature, address, and license number, and renewed his previously denied suppression motion on the ground that Cross' continued inspection of the car, after being given the rental agreement that established Brims' lawful use, constituted an unreasonable search. That renewed suppression motion also was denied. The Thrifty car rental agreement bearing defendant's name was admitted in evidence at the second trial as a defense exhibit.

After examining defendant's license and the rental agreement, Corporal Cross waited for backup units to arrive before searching the vehicle. Officer David Stein was next to arrive at the scene, and he ordered defendant and Brownlee to keep their hands on the vehicle and to stop speaking. Corporal Cross then began to inspect the inside of the car. He looked into the rear compartment and observed on the back seat a pair of black gloves, four women's stockings, a black hair net, some empty bags and several empty plastic soda bottles. Cross was permitted to testify at trial that persons engaging in the commission of crimes sometimes use

nylon stockings to disguise facial features and also use gloves to avoid leaving fingerprints.

While inspecting the front compartment of the vehicle, Cross observed the butt of a shotgun protruding from beneath the driver's seat. Cross shouted to the other officers that there was a shotgun in the car, and ordered Brims and Brownlee to lie down on the ground. Instead, they ran toward the car but were intercepted and restrained by Cross and the backup officers. No weapons were found on either defendant. The stock of the shotgun found in the car had been sawed-off, and Cross testified that that made the shotgun easier to conceal. The shotgun contained nine rounds of ammunition. A State's firearms expert testified that the shotgun fired normally when he tested it in 1997, but he acknowledged that an FBI test on the gun in 1993 revealed that the weapon fired manually but not automatically.

Testimony at the re-trial disclosed that at the time defendants were apprehended several businesses in the area adjoining the parking lot were still open, including a liquor store, a pharmacy and a supermarket. Corporal Cross acknowledged on cross-examination that no homeowners or store owners in the vicinity of the parking lot had telephoned police headquarters to report suspicious activity. Officer Stein testified that co-defendant Brownlee had white gloves and one pair of nylons in his pocket. He acknowledged that no maps or lists of stores or descriptions of the area were found in the vehicle or in the possession of defendants.

In addition to being indicted for possession of a weapon for an unlawful purpose (count one), Brims also was indicted and convicted at his first trial of third-degree possession of a firearm without a firearm's identification card (count two), third-degree possession of a semi-automatic rifle (count three), and second-degree possession of a weapon by a convicted felon (count seven). The original trial court merged defendant's convictions on counts two and three with his conviction for possession of a weapon for an unlawful purpose, and sentenced him on that offense to an extended term of

fifteen years with five years of parole ineligibility. A consecutive seven-year sentence was imposed for defendant's conviction of possession of a weapon by a convicted felon, and a concurrent four-year term was imposed on count four (possession of CDS). After defendant's retrial, the court reimposed the same sentence as had been imposed by the first trial court.

## II

### A

As noted, the State's articulation of defendant's criminal purpose for possessing the firearm was vague and imprecise. At the retrial, the prosecutor theorized that defendant's possession of a sawed-off shotgun, in combination with the presence of nylon stockings and gloves in the rental car, was sufficient for the jury to find beyond a reasonable doubt that defendant possessed the weapon with the purpose to commit a robbery or burglary. The State did not offer any proof concerning what the target of the alleged robbery or burglary might be, nor did the trial court's instruction inform the jury that the State bore any burden of identifying the person or property that was the objective of defendant's criminal purpose. Reexamination of the role of *N.J.S.A.* 2C:39–4 in the New Jersey Code of Criminal Justice (Code) *N.J.S.A.* 2C:1–1 to 98–4, demonstrates that defendant's conviction of that offense cannot be sustained on this record.

*N.J.S.A.* 2C:39–4(a) provides that "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second-degree." That section is one of a number of provisions in Chapter 39 of the Code designed to regulate the sale, manufacture, use or possession of certain weapons. In *State v. Harmon,* 104 *N.J.* 189, 196–97, 516 *A.*2d 1047 (1986), Justice O'Hern noted that we previously had "referred to the provisions of Chapter 39 as a 'carefully constructed,' *State v. Lee,* 96 *N.J.* 156, 160, 475 *A.*2d 31 (1984), and 'comprehensive regulatory program,' *State v. In-*

*gram,* 98 *N.J.* 489, 499, 488 *A.2d* 545 (1985), in which each provision must be construed in light of the others, lest the sections become superfluous."

In *Harmon, supra,* we carefully explained the differences in the three critical sections of Chapter 39:

> Broadly speaking, the framework for regulating the possession of firearms and other weapons is contained in three sections of Chapter 39: *N.J.S.A.* 2C:39–3, –4, and –5. The three titles to the sections of the chapter highlight the differences: 39–3, *Prohibited Weapons and Devices;* 39–4, *Possession of Weapons for Unlawful Purposes;* and 39–5, *Unlawful Possession of Weapons.* Sections 39–3 and 39–5 are similar in that both are essentially regulatory offenses: they prohibit possession of firearms and other weapons without regard to the individual's intent or purpose in possessing them. The only "intent" required is the general intent to possess the weapon: in the language of the Code, "knowledge" that such circumstances exist. *See N.J.S.A.* 2C:2–2(b)(2) (defining mental state of "knowingly").
>
> The primary distinction between the two regulatory offenses is that *N.J.S.A.* 2C:39–3 prohibits entirely the possession of certain inherently dangerous devices— sawed-off shotguns, silencers, and armor-piercing bullets, for example—whereas *N.J.S.A.* 2C:39–5 prohibits the possession of a narrower class of firearms—machine guns, handguns, rifles, and shotguns—but allows such possession to be sanctioned by permit, license, or other official authorization under Chapter 58 of the Code.
>
> [104 *N.J.* at 197, 516 *A.2d* 1047.]

We also observed that violations of sections 2C:39–3 and –5 are third and fourth-degree offenses. *Id.* at 197–98, 516 *A.2d* 1047.

We noted in *Harmon, supra,* that *N.J.S.A.* 2C:39–4 also prohibits possession of firearms, explosives, destructive devices, and other weapons. We observed, however, that

> unlike its regulatory counterparts, section 39–4 in each instance prohibits possession of such instruments only when the possessor has 'a purpose to use [the device] unlawfully against the person or property of another * * *.' It is the existence of the unlawful-purpose element that explains why violations under *N.J.S.A.* 2C:39–4 are, for the most part, more serious offenses of the second degree that carry a presumption, under *N.J.S.A.* 2C:44–1(d), of incarceration.
>
> [*Id.* at 198, 516 *A.2d* 1047 (quoting *State v. Lee,* 96 *N.J.* 156, 162, 475 *A.2d* 31 (1984)).]

We also noted that *N.J.S.A.* 2C:39–4(a) is unique among all the Chapter 39 offenses in that "it alone triggers the parole-ineligibility provisions of the Graves Act. See *N.J.S.A.* 2C:43–6(c)." *Ibid.*

Accordingly, the relevant sections of Chapter 39 of the Code include purely regulatory provisions that establish possessory

offenses requiring no wrongful intent, as well as more serious promissory offenses that require proof of criminal culpability on the part of the accused. That analysis led us to observe in *Harmon, supra,*

> that the Legislature was concerned with something more than mere knowing possession in enacting the unlawful-purpose offenses. By tying the increase in gradation of the penalty to the existence of an unlawful purpose, the Legislature has made plain that the offenses under section 39–4 are not by nature simply regulatory: they are directed not at penalizing possession *per se,* but rather at penalizing the intent to use such weapons affirmatively to commit crimes.
>
> [*Id.* at 199, 516 *A.*2d 1047.]

Moreover, as we noted in *State v. Petties,* 139 *N.J.* 310, 321, 654 *A.*2d 979 (1995), the purpose of the possession must be illegal and must exist " 'at whatever time the State claims that [possession for an unlawful purpose] offense took place.' " (quoting *Harmon, supra,* 104 *N.J.* at 210, 516 *A.*2d 1047). *Accord State v. Diaz,* 144 *N.J.* 628, 635, 677 *A.*2d 1120 (1996).

We also explained in *Harmon* that although the crime of possession of a firearm for an unlawful purpose is grouped, for convenience, in Chapter 39 with other regulatory weapons-possession offenses, that crime nevertheless

> incorporates the concept of specific intent typified by the inchoate offenses of attempt, conspiracy, and criminal solicitation. Characteristic of the inchoate offenses—now contained in Chapter 5 of the Code, *N.J.S.A.* 2C:5–1 to –7—is their focus on incipient criminal behavior: in short, conduct that is "designed to culminate in the commission of a substantive offense but has * * * not yet achieved its culmination because something remains to be done * * *." These offenses "always presuppose a purpose to commit another crime * * *."
>
> [*Harmon, supra,* 104 *N.J.* at 203, 516 *A.*2d 1047 (citations omitted).]

Accordingly, we concluded in *Harmon* that the crime of possession of a firearm for an unlawful purpose is "an inchoate offense in the sense that it seeks to prevent incipient crime," analogous to the more common inchoate offenses such as attempt and conspiracy addressed in Chapter 5 of the Code. *Id.* at 203–04, 516 *A.*2d 1047. *See also State v. Mello,* 297 *N.J.Super.* 452, 466, 688 *A.*2d 622 (App.Div.1997) (noting that "possession of a firearm for an unlawful purpose is a preparatory crime").

### B

Some of the legal principles governing prosecutions pursuant to *N.J.S.A.* 2C:39–4(a) are reasonably well-established. One such principle is that

> a jury instruction on a charge of gun possession for unlawful purpose must include an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the unlawfulness of some other undescribed purpose.
>
> [*State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 A.2d 1240 (App.Div.1989).]

In *Jenkins* defendant was indicted for possession of a handgun for an unlawful purpose, possession of a handgun without a permit and second-degree aggravated assault of his wife. Defendant was acquitted of aggravated assault but convicted of simple assault as a lesser-included offense, and convicted of both possessory offenses. The charges were based on an altercation between defendant and his wife in a bar during which defendant punched his wife in the face. The argument continued in the parking lot outside the bar, in the course of which sounds resembling gunshots were heard, one of defendant's daughters was heard by a witness to say "he's shooting," and defendant's wife allegedly informed a police officer that defendant possessed a .25 caliber automatic handgun at the scene.

The Appellate Division reversed defendant's conviction for possession of a weapon for an unlawful purpose. The court noted that the trial court correctly instructed the jury that to convict defendant of that charge it must find that defendant possessed a firearm, that his purpose was to use it against the person of another, and "that he intended to use it in a manner that was prohibited by law, that is, to commit an illegal act." *Id.* at 315, 560 A.2d 1240.

The Appellate Division observed:

> It is impossible to say with any assurance what the jury thought was defendant's unlawful purpose. The problem arises from the fact that defendant was acquitted of aggravated assault, which means that the jury probably had a reasonable doubt that defendant fired a gun at his wife. It is apparent the jury believed he was carrying a gun, but not what it thought his purpose was in doing so.

In most cases, a charge of possession with unlawful purpose is coupled with a charge of an act accomplished with the gun—a robbery, an assault, a homicide—which the court tells the jury is unlawful. Conviction of such an unlawful act supplies the factual basis for an inference of unlawful purpose in possessing the gun. But, if the possession charge stands alone, or if acquittal of the accompanying charge erases the identification of the unlawful purpose, the court may not permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful.

Here, for instance, the jury might have thought defendant's purpose in carrying a gun was to impress his estranged wife, or to threaten her, or to lessen the chance of physical confrontation with others, or to fire the weapon into the air to avoid attack by others. The problem is pointed up by the State's summation, which included:

> If you feel, *for whatever reason*, that he possessed that gun for an unlawful purpose, be it just to show somebody and scare somebody with, wave it around, then you must find him guilty of that charge.

[*Jenkins, supra.* at 315, 560 A.2d 1240 (citations omitted).]

Accordingly, the court reversed defendant's conviction of possession of a weapon for an unlawful purpose because the jury charge did not include

an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the unlawfulness of some other undescribed purpose.

[*Id.* at 316, 560 A.2d 1240.]

Similarly, in *State v. Villar*, 150 N.J. 503, 696 A.2d 674 (1997), we noted that ·

a jury instruction on a charge of possession of a weapon for an unlawful purpose must include an identification of the unlawful purpose or purposes suggested by the evidence and an instruction that the jury 'may not convict based on their own notion of the unlawfulness of some other undescribed purpose.' *State v. Jenkins*, 234 N.J.Super. 311, 316, 560 A.2d 1240 (App.Div.1989). In addition, the trial judge should explain to the jury that the criminal purpose or state of mind may exist at whatever time the State claims that the possessory offense took place, *and relate the specific unlawful purpose charge to the facts of the case. Harmon, supra*, 104 N.J. at 210, 516 A.2d 1047.

[*Id.* at 511, 696 A.2d 674 (emphasis added).]

Our cases are less clear concerning the extent to which a jury may be permitted to infer a defendant's unlawful purpose on the basis of circumstantial evidence. On that question, the most expansive holding to date is *State v. Latimore*, 197 N.J.Super. 197, 484 A.2d 702 (App.Div.1984). In *Latimore* all four defendants

were convicted of possession of a shotgun and two handguns for an unlawful purpose, and also were convicted of several other pure possessory offenses. *Id.* at 206–07, 484 *A.*2d 702. The State's evidence revealed that three of the defendants—Wade, Williams and Payne-were observed by two police officers at 3:01 a.m. seated in an automobile with the engine running and the headlights off. *Id.* at 208, 484 *A.*2d 702. The car was parked on the east side of West Street facing north, just past the intersection of Monmouth and West Streets in Red Bank, in a mixed residential and commercial area. *Ibid.* Adjacent to and just east of the vehicle was a parking lot of a vacuum cleaner store that fronted on Monmouth Street, and a row of hedges about seven feet high separated the vehicle from the parking lot. *Ibid.* The police officers previously had observed defendant Latimore walking east on Monmouth Street in front of the vacuum cleaner store. *Ibid.*

The officers went around the block, drove southbound on West Street, and spoke to defendant Wade, who was seated behind the wheel. *Ibid.* He said they were waiting for a friend who was visiting a cousin. *Id.* at 209, 484 *A.*2d 702. The officers told defendants to leave the area. *Ibid.* They then observed Latimore walking west on Monmouth Street toward the car, and subsequently saw him change direction and walk to the northwest corner of the intersection. *Ibid.* The officers next observed defendant Payne step out of the car and walk toward the hedges. *Ibid.* The officers then returned to the vehicle and asked for identification, which the three defendants could not produce. When informed that Latimore owned the car, the officers called him over and he produced adequate identification. *Ibid.* When Payne was questioned, he denied having exited the car. At the officer's direction, Latimore drove the car from the area proceeding north on West Street. *Ibid.*

When the officers searched the hedges they found a 12–gauge sawed-off shotgun and a handgun on the ground beneath the hedges. Information about the defendants was then radioed to police headquarters. *Ibid.* Shortly thereafter, an officer in an-

other patrol car stopped the defendants' vehicle as it was proceeding east on Monmouth Street, slowly passing the intersection of West Street. The occupants were placed under arrest. *Ibid.* Defendant Payne had a twelve-gauge shotgun shell in his pants' pocket that matched a shell found in the shotgun. *Id.* at 210, 484 *A*.2d 702. A second handgun was found under the hedges. *Ibid.*

Concerning the sufficiency of the evidence to sustain defendant's conviction for possession of weapons for an unlawful purpose, the Appellate Division observed:

> At the time it was observed by the police, the car was parked, at 3:01 a.m., with the engine running and the lights out, in a residential and commercial area, with a man walking in front of a commercial establishment. Only Latimore produced identification. Although he was observed by Officer Scott, Payne denied getting out of the car. After being directed to leave the area, the vehicle returned to the scene where the guns had been left. All of these proven circumstances, coupled with the statutory inference of possession of weapons found in a vehicle by all occupants of that vehicle, are sufficient to establish joint possession of these weapons by all four occupants. The circumstance that the vehicle was parked at an early hour of the morning with the engine running and the lights out is sufficient to support an inference that the weapons were possessed with a purpose to use them unlawfully at least against the property of another.
>
> [*Id.* at 211, 484 *A*.2d 702.]

Because of the proximity of the defendants in *Latimore* to the vacuum cleaner store at 3:00 a.m., the suspicious pacing of Latimore himself in front of the store, and the presence of weapons in the hedges adjacent to the parking lot, the evidence in *Latimore* was far more suggestive of an intent to commit a property-related offense than is the evidence in this case. Nevertheless, the holding in *Latimore* highlights the question of what quality of proof is adequate to sustain a conviction for possession of a weapon for an unlawful purpose. Helpful guidance in resolving that issue may be found in the case law dealing with evidence required to prove the analogous preparatory offenses of attempt and conspiracy, both of which, like possession of a weapon for an unlawful purpose, are inchoate offenses that seek to prevent incipient crime. *Harmon, supra,* 104 *N.J.* at 203–04, 516 *A*.2d 1047. Concerning attempts, *N.J.S.A.* 2C:5–1(a) provides that one can be found guilty of an "attempt" to commit a specific crime if

acting with the kind of culpability otherwise required for commission of the crime, he:

. . . .

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

In *State v. Farrad*, 164 *N.J.* 247, 753 *A.*2d 648 (2000), Justice Coleman explained the distinction between mere preparation and the evidence required to sustain a conviction for an attempt. He stated:

"Attempt" can be easily defined. The difficulty lies in distinguishing between mere preparation and the substantial step requirement of an attempt. As noted in the 1971 *New Jersey Penal Code Commentary, Vol. II, at 117, New Jersey Penal Code, Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission 117* (1971) (hereinafter *Commentary* ), the Model Penal Code's

approach to this problem is to set forth two requirements which in addition to the requisite criminal purpose, distinguish attempt from preparation: (1) The act must be 'a substantial step in the course of conduct' planned to accomplish the criminal result, and (2) the act must be 'strongly corroborative' of criminal purpose in order for it to constitute such a substantial step.

Thus, the "substantial step" requirement in the "attempt" statute, *N.J.S.A.* 2C:5–1a(3), is satisfied if a defendant acts in a way that is "strongly corroborative of the 'firmness of his purpose' " to carry out the crime.

Based on the foregoing principles, a defendant can be convicted of robbery, even if the theft is unsuccessful, if he or she (1) purposely takes a substantial step (2) to exercise *unlawful control* over the *property of another* (3) *while threatening another with, or purposely placing another in fear of,* immediate bodily injury.

[*Id.* at 257–58, 753 *A.*2d 648 (citations omitted).]

*See also State v. Schwarzbach*, 84 *N.J.L.* 268, 269–70, 86 *A.* 423 (E & A 1913) ("[T]o constitute an attempt to commit a crime something more than mere preparation is essential; there must be an overt act directly moving toward the commission of the crime.")

Our cases also require proof beyond mere preparation to sustain a conviction for conspiracy. *N.J.S.A.* 2C:5–2(a) provides:

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

The Code provides specifically that in prosecutions for conspiracy to commit a first or second-degree crime the State need not prove that a defendant committed an overt act in furtherance of the conspiracy. *N.J.S.A.* 2C:5–2(d). Accordingly, in *State v. Scherzer*, 301 *N.J.Super.* 363, 694 *A.*2d 196 (App.Div.1997), where defendants were convicted of conspiracy to commit first and second-degree crimes, the court observed that

the sufficiency of the evidence as to the commission of an overt act is not at issue. *Ibid.* The only question is whether a reasonable jury, viewing the State's evidence in its most favorable light, could find beyond a reasonable doubt that defendants, acting with a purposeful state of mind, *agreed to commit, attempted to commit, or aided in the commission of an aggravated sexual assault.*

[Emphasis added.]

Our cases also note the distinction between conspiracy and attempt prosecutions:

[A] conspiracy charge focuses primarily on the *intent* of the defendants, while in an attempt case the primary inquiry centers on the defendants' *conduct* tending toward the commission of the substantive crime. The crime of conspiracy is complete once the conspirators, having formed the intent to commit a crime, take any step in preparation; mere preparation, however, is an inadequate basis for an attempt conviction regardless of the intent.

[*State v. Moretti*, 52 *N.J.* 182, 187, 244 *A.*2d 499 (1968).]

### III

I am persuaded that, analogously to the crimes of attempt and conspiracy, the crime of possession of a weapon for an unlawful purpose requires proof that, "at whatever time the State claims that the possessory offense took place," *Harmon, supra,* 104 *N.J.* at 210, 516 *A.*2d 1047, the defendant not only possessed the weapon but also intended to use the weapon to accomplish a specific criminal purpose. *Id.* at 204, 516 *A.*2d 1047. The quality of proof necessary to establish such an intent is, in my view, less than the proof required to convict of an attempt, *i.e.*, an act that is a "substantial step" in the course of conduct planned to commit the crime and which is strongly corroborative of the criminal purpose. *Farrad, supra,* 164 *N.J.* at 257–58, 753 *A.*2d 648. In

our criminal offense hierarchy, an attempt to commit an offense, although also a preparatory crime, involves a more substantial step in the course of commission of the underlying crime than does possession of a weapon for an unlawful purpose. Without question, the proofs adduced by the State at trial would not have been sufficient to convict Brims of either attempted robbery or attempted burglary, the State not having presented evidence of any act constituting a "substantial step" toward the commission of robbery or burglary.

A closer analogy is the proof required to convict of conspiracy to commit a first or second-degree crime. Although no proof of an overt act is necessary, the State must prove that the defendant, acting purposely, agreed to commit, attempted to commit, or aided in the commission of the offense. *Scherzer, supra,* 301 *N.J.Super.* at 401, 694 *A.*2d 196. Because possession for an unlawful purpose can be committed individually, the State obviously need not prove the existence of an underlying agreement to sustain a conviction. Equally clear is that the State had not presented at trial sufficient evidence to have convicted Brims and his co-defendant of conspiracy to commit robbery or burglary, the State not having offered evidence of any agreement, any attempt to commit crimes, or any act that aided in the commission of those offenses.

Although I acknowledge that the proofs necessary to sustain a conviction for possession for an unlawful purpose are less than those required to prove attempt or conspiracy, the common thread among those offenses—their incipient and preliminary characteristics—suggests that at the very least the quality of proofs required to identify the criminal objective of each of those offenses should be harmonious. For attempt and conspiracy, proof of either a substantial step toward the offense, or an agreement to commit the offense, requires proof of the intended offense with sufficient specificity to link the substantial step or the agreement to the offense.

No less specificity should be required to prove the unlawful purpose in a prosecution for possession of a weapon for an

unlawful purpose. That proof must be sufficiently precise to identify the criminal objective with some specificity and to connect the defendant's conduct, beyond mere possession of the weapon in question, to that criminal objective. To allow a jury to guess at the criminal objective, to speculate about when the crime was to be committed (or whether it already had been committed), and to rely on evidence equally susceptible to both benign or criminal purposes would subvert the role of the possession for a unlawful purpose charge from that intended by the drafters of our Code.

That basic standard of proof was not satisfied in this case. The presence of gloves and stockings in the back seat of the car and in Brownlee's pocket, combined with the extra T-shirt and socks defendant was wearing, simply does not prove that defendant, at the time of his arrest, had the specific intent to use the shotgun to accomplish a specific criminal purpose. That evidence was equally consistent with the possibility that defendant and Brownlee had used the stockings, gloves, and shotgun to commit a crime earlier that day or several days before the arrest. It also was consistent with defendant's explanation, supported by the presence of empty bottles in the back seat, that he and Brownlee were cleaning out the car, an explanation made more credible by the evidence that the car had been rented by Brims and also by the fact that Brims and Brownlee remained in the parking lot after being observed by Paccico. Defendant's presence in a public parking lot at 8:15 p.m., along with thirty or forty other cars, is hardly suggestive of a criminal purpose. The State's proofs of the allegedly unlawful purpose were so vague and imprecise that, at the first trial, aggravated assault was asserted to be the underlying criminal objective, a contention the State abandoned at the second trial. Nor was the trial court able, because of the insufficient proofs, to identify for the jury the "unlawful purposes as may be suggested by the evidence," *Jenkins, supra,* 234 *N.J.Super.* at 316, 560 *A.*2d 1240, or "relate the specific unlawful purpose charged to the facts of the case." *Petties, supra,* 139 *N.J.* at 321, 654 *A.*2d 979. Because of those obvious deficiencies in the instruction, the jury was wrongly permitted to convict defendant of the possession for

an unlawful purpose charge "based on their own notion of the unlawfulness of some [ ] undescribed purpose." *Jenkins, supra,* 234 *N.J.Super.* at 316, 560 *A.*2d 1240. In my view, not only was the trial court's instruction deficient, but, in addition, the State's evidence was insufficient to permit the possession for an unlawful purpose charge to be submitted to the jury.

## IV

For the reasons stated, I would reverse defendant's conviction for possession of a weapon for an unlawful purpose.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—6.

*For reversal*—Justice STEIN—1.