**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2537-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL WASHINGTON,
a/k/a RED WASHINGTON,

     Defendant-Appellant.

_____

Argued September 16, 2021 – Decided October 12, 2021

Before Judges Alvarez, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 16-08-0636, 17-10-0572, and 18-01-0045.

Daniel S. Rockoff, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Daniel S. Rockoff, of counsel and on the brief).

Paul H. Heinzel, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Paul H. Heinzel, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Michael Washington, also known as Red Washington, of certain counts of Indictment No. 18-01-0045: first-degree aggravated manslaughter as a lesser-included offense of murder, N.J.S.A. 2C:11-4(a)(1) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count two); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count three). On June 29, 2018, three days after the trial ended, defendant pled guilty to the fourth count of that indictment, third-degree drug possession, N.J.S.A. 2C:35-10(a)(1), and two unrelated charges: second-degree unlawful possession of a handgun, Indictment No. 16-08-0636; and third-degree possession of a controlled dangerous substance (CDS), Indictment No. 17-10-0572. The plea agreement called for a seven-year prison term with three and one-half years of parole ineligibility, consecutive to the trial judge's sentence on the tried offenses, and four years on the drug charges, to be served concurrently to the other sentences.

At the sentence hearing on October 29, 2018, the trial judge merged count two, possession of a weapon for an unlawful purpose, into the aggravated manslaughter conviction, and sentenced defendant to thirteen years' incarceration subject to the No Early Release Act's eighty-five percent parole

2

ineligibility.  See N.J.S.A. 2C:43-7.2.  He imposed a consecutive seven-year term, half of which he made parole ineligible, on count three, second-degree unlawful possession of a handgun.  On Indictment No. 16-08-0636, unlawful possession of a handgun, the judge imposed a consecutive seven-year sentence as called for in the plea agreement, subject to three and one-half years of parole ineligibility.  Thus, defendant's aggregate sentence was twenty-seven years, of which eighteen years and one month was parole ineligible.

We affirm the convictions because defendant's arguments attacking the judge's jury instructions lack merit.  However, we remand for the judge to conduct a new sentence hearing, as he did not engage in the necessary State v. Yarbough analysis.  See 100 N.J. 627 (1985).

## I.

We briefly describe the facts as developed at trial.  At approximately 6:30 p.m. on October 16, 2017, Bound Brook Police Department Officer Janos Bojtos responded to a "shots fired" report on Church Street.  When he arrived, Bojtos found the victim, William Roberts, lying on his back with a gunshot wound to his abdomen.  Roberts died later that night.  He wore a red sweatshirt and had no weapon.  Bojtos found no firearms on the scene.

The police did find three spent shell casings and two full cartridges at the scene. The State's forensic ballistics expert testified that the three shell casings were brass .22 caliber bullets all fired from the same weapon. The expert stated that the two cartridges were also brass .22 caliber hollow-point rounds consistent with the shell casings. The bullet fragments taken from the victim's body were also consistent with hollow point .22 caliber projectiles.

The State presented several witnesses, including Daniel Jennings, who had spent the day with Roberts and his sister, Estelle Haskins, at her Church Street apartment. About ten minutes before the shooting, the men went outside. While walking in the neighborhood, a couple of people told them "to get out of there" because "the block was going to get shot up." They began to head back to Church Street.

Once there, Roberts told Jennings that someone was approaching. Before Jennings could turn around, he heard the sound of gunshots fired behind him. Jennings knelt next to a parked car, then spotted defendant across the street. Jennings heard another shot before Roberts grabbed himself, exclaiming that he "got hit." Jennings ran back to Haskins' apartment.

Jennings testified that neither he nor Roberts were armed that day. He said that if Roberts had been carrying a gun, "he'd still be here."

A-2537-18

At the apartment, Haskins heard three shots and opened the door to find Jennings running and yelling at her to call an ambulance. Haskins ran outside while a friend, Jessica Sanchez, called 9-1-1.

Sanchez saw defendant running from the scene. She said Roberts and Jennings were not armed that day.

Several neighbors also testified. One described a man in gray clothes putting away a gun while two other men—one wearing red—headed up the street. Another resident heard the shots, then saw a man wearing gray gesture to a man in a black hoodie across the street, who then ran to a man wearing a red hoodie on the same side of the street. As the shots were fired, the two ran away.

Another resident, Karol Rodriguez, heard two loud "pops" and looked out her window to see two men across the street from another wearing a gray jacket with black shoulder patches. The man in gray shot at the men on the other side of the street—including the unarmed individual in red.

John Hewitt also heard a shot then looked out his window. He saw a man in a gray hoodie carrying a gun. Hewitt called 9-1-1 and then saw the man in gray fire "more shots."

The police investigated and obtained an image captured by a surveillance camera at 6:21 p.m. of a man dressed in gray pants and a dark hoodie with gray sleeves. The police arrested defendant two weeks after the shooting. He was hiding in the basement of a house within walking distance of Church Street. When police executed a search warrant there, they recovered a gray, hooded sweat jacket with a dark body and gray hood, and a pair of gray sweatpants.

While defendant was in the Somerset County Jail, he told two inmates—both of whom testified at trial—that he shot Roberts. Steven Ferrara testified defendant told him he had an "issue" with an old friend and "shot him" in the stomach. Defendant claimed his gun "wouldn't be found" because he had "recycled" it, and that he wore gray during the shooting.

Defendant later told Ferrara that about six months before the shooting Roberts had put a gun to the head of defendant's infant son after an argument. Defendant further revealed his plan to lie to the prosecutor's office in an attempt to place the blame on a man defendant called "Junior."

The other inmate, Brody Crowley, testified that defendant admitted retaliating against Roberts by shooting him. Defendant also told Crowley he planned to tell the prosecutor's office he wore a blue shirt on the day of the shooting.

6

On February 7, 2018, defendant, accompanied by his attorney, gave a sworn statement to prosecutors. The statement, in which defendant said that on the day of the shooting he was with a man named "Junior," was played for the jury. Defendant claimed he was wearing a blue shirt that day, while Junior was dressed in gray.

According to defendant, Junior came to Bound Brook to sell marijuana. He and Junior ran into Roberts and Jennings at the train station, and Roberts told defendant that he was "going to switch your shit," which defendant interpreted as a threat to shoot him. When on Church Street, defendant stated he ran away when he saw Roberts pull out a gun. He heard a shot and saw that Junior had shot Roberts. Defendant further alleged that about six months earlier, Roberts and another man came to his house and threatened him because defendant had provided the police with information about one of Roberts' associates, Isaiah Wilson.

After the State rested, defendant took the stand and repudiated the February 7, 2018 statement concerning Junior's alleged involvement in the shooting. For the first time, he claimed that he shot Roberts in self-defense. Defendant said that in June 2017, police arrested Wilson when defendant implicated Wilson in a crime. Roberts and Jackson then came to his house,

threatened defendant, and pointed a gun at defendant's son's head. Defendant did not report the incident to the police.

On the day of the shooting, according to defendant, Roberts told him he was going to "split your shit." Defendant ran and saw Roberts pull out a gun and take a shot at him. Defendant claimed he then took out his own gun and fired back at Roberts. He denied trying to hurt Roberts, claiming he only wanted to get away.

Defendant admitted wearing the gray jacket and pants the police found during their search, and agreed he was the man pictured in the surveillance video. He also conceded that when he went to the prosecutor's office to give his statement about Junior's alleged involvement in the shooting, he falsely swore he wore blue that day because he knew the witnesses had described the shooter as wearing gray.

We address the jury charges and the sentence in the relevant sections. On appeal, defendant raises the following claims of error:

POINT I

THE COURT FAILED TO INSTRUCT THE JURY THAT IT WAS REQUIRED TO ACQUIT THE DEFENDANT OF ALL HOMICIDE CHARGES IF IT DETERMINED THAT THE STATE HAD NOT DISPROVEN SELF-DEFENSE BEYOND A REASONABLE DOUBT. (Not Raised Below).

POINT II

THE COURT FAILED TO PROVIDE TAILORED GUIDANCE TO THE JURY ON HOW TO EVALUATE THE AGGRAVATED MANSLAUGHTER CHARGE. (Not Raised Below).

POINT III

A RESENTENCING REMAND IS REQUIRED BECAUSE (1) THE COURT IMPOSED CONSECUTIVE TERMS WITHOUT CONSIDERING THE STATE V. YARBOUGH[1] FACTORS; (2) THE CONSECUTIVE TERMS ALSO VIOLATED PRECEDENT; AND (3) THE COURT ERRED BY NOT CONSIDERING MITIGATING FACTOR 12.

After reviewing the record in light of the contentions advanced on appeal, we affirm defendant's convictions but remand for resentencing.

II.

"A person may justifiably use force against another if he 'reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.'" State v. Galicia, 210 N.J. 364, 389 (2012) (quoting N.J.S.A. 2C:3-4(a)). "The use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious

---

[1] Yarbough, 100 N.J. at 627.

bodily harm . . . ." N.J.S.A. 2C:3-4(b)(2). Moreover, the use of deadly force is not justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . ." N.J.S.A. 2C:3-4(b)(2)(b).

After conferring with counsel, the judge charged the jury on aggravated manslaughter and reckless manslaughter as lesser-included offenses to the murder charge. It is well established that the defense of self-defense applies to all forms of homicide, including aggravated manslaughter and reckless manslaughter. State v. O'Neil, 219 N.J. 598, 601 (2014) (citing State v. Rodriguez, 195 N.J. 165, 172-74 (2008)).

To ensure the jury was properly instructed on this point, the judge and the attorneys tailored the self-defense charge to include this information. During the charge conference, the judge and counsel agreed the self-defense instruction should follow the judge's instructions on the elements of murder and the lesser-included offenses of aggravated manslaughter and reckless manslaughter. The attorneys also agreed that the judge should begin the self-defense instruction by telling the jury:

> I'm now going to charge you on a portion of the Criminal Code, N.J.S.A. 2C:3-4, justification, self-defense.
>
> The Indictment charges that the defendant has committed the crime of first-degree murder.

There are also for your consideration, as previously expressed, the charges of aggravated manslaughter and reckless manslaughter.

This instruction applies to all of those forms of homicide.

The defendant contends that . . . if the State proves he used force upon the other, William Roberts, that such force was justifiably used for his self[-]protection.

[(Emphasis added).]

The judge then read the model self-defense instruction[2] as modified by the

agreement of both counsel. At the end of that instruction, the judge told the

jury:

The burden of proof is upon the State to prove beyond a reasonable doubt that the defendant knew he could have retreated with complete safety. If the State carries its burden, then you must disallow the defense. If the State does not satisfy this burden and you do have a reasonable doubt, then it must be resolved in favor of the defendant and you must allow the claim of self-defense and acquit the defendant.

[(Emphasis added).]

In Point I of his brief, defendant argues for the first time that the trial

judge committed plain error by not specifically instructing the jury to "also

---

[2]  Model Jury Charges (Criminal), "Justification – Self Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011).

acquit [defendant] of aggravated and reckless manslaughter if it found while deliberating the murder charge that the State had failed to disprove self-defense beyond a reasonable doubt." We conclude that the court clearly instructed the jury that self-defense was a defense to both lesser-included manslaughter charges, and that the jury should acquit if it found self-defense applied to either.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). The charge is the jury's "road map" of the law to guide it in its deliberations. State v. Martin, 119 N.J. 2, 15 (1990). We assume jurors follow the court's instructions. State v. T.J.M., 220 N.J. 220, 237 (2015).

In reviewing a claim of error relating to a jury charge, we consider the alleged error "in light of the entire charge" and evaluate it "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). When counsel fails to object "at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'" State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

Finally, when the party challenging an instruction did not object at trial, we review for plain error and "disregard any alleged error 'unless it is of such a

nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Here, we find no error in the judge's instructions. The judge instructed the jury clearly and entirely consistently with the model jury charge. See Model Jury Charges (Criminal), "Justification – Self-Defense in Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011). As agreed upon by the prosecutor and defendant, the self-defense charge followed the judge's instructions on murder, aggravated manslaughter, and reckless manslaughter.

To ensure the jury understood the self-defense instruction applied to all three forms of homicide, the judge explained at the outset that the self-defense "instruction applies to all of those forms of homicide." The judge also told the jury that reasonable doubts had to "be resolved in favor of the defendant and [the jury] must allow the claim of self-defense and acquit the defendant."

Defendant now asserts it would have been better if the judge had stated that if the jury found that defendant's claim of self-defense was sufficient to acquit him of murder, the jury must also acquit him of aggravated manslaughter and reckless manslaughter. However, the judge's instruction did just that. After all, the judge said the self-defense instruction "applie[d] to all of those forms of homicide"—namely, murder, aggravated manslaughter, and reckless manslaughter.

A defendant is not entitled to have the jury charged in his own words. State v. Pigueiras, 344 N.J. Super. 297, 317 (App. Div. 2001). Thus, defendant seeks to substitute his own set of words for the judge's words, which clearly explained the same substantive legal principle to the jury.

The judge adequately instructed the jury that self-defense applied to each of the homicide-related offenses and that if the defense was established, defendant should be acquitted of all three of these crimes. The alleged error in this case neither prejudiced defendant's substantial rights nor had the capacity to bring about an unjust result. See State v. Alexander, 233 N.J. 132, 141-42 (2018). The contention has no merit.

## III.

Defendant argues in Point II, again for the first time on appeal, that the judge plainly erred by failing to provide the jury with a description of all of the evidence presented at the trial that was relevant to recklessness in connection to the lesser-included offense of aggravated manslaughter. This argument also lacks merit because the judge's omission did not prejudice defendant's substantial rights or cause an unjust result. See ibid.

The model jury charge for aggravated manslaughter gives the trial judge the option of "[s]ummariz[ing], if helpful, all of the evidence relevant to recklessness, including any contrasting accounts of events by the defense and the State." Model Jury Charges (Criminal), "Murder and Aggravated/Reckless Manslaughter" (rev. June 13, 2011). Neither party asked the judge to include such a summary in the final jury instruction.

It is well established that "[t]rial courts have broad discretion when commenting on the evidence during jury instruction." State v. Brims, 168 N.J. 297, 307 (2001). Generally, "summarizing the strengths and weaknesses of the evidence is more appropriately left for counsel." State v. Robinson, 165 N.J. 32, 45 (2000) (citing State v. Walker, 322 N.J. Super. 535, 551 (App. Div. 1999)). Thus, the determination of when and how to comment on the facts and

evidence during the jury instructions is left "to the sound discretion of the trial court to decide on a case-by-case basis . . . ." Ibid.

Of course, "there are situations in which [courts] do require that jury instructions be 'molded' or 'tailored' to the facts adduced at trial." Id. at 42; see also State v. Concepcion, 111 N.J. 373, 379 (1988) (stating that a trial judge may sometimes have to mold the model jury charge "in a manner that explains the law to the jury in the context of the material facts of the case."). However, this requirement usually only applies to potentially confusing or misleading statements of law not couched in the relevant facts. Robinson, 165 N.J. at 42.

Here, omitting facts relevant to recklessness did not render the judge's instruction confusing or misleading. As noted above, defense counsel did not ask the judge to summarize these facts. Such a tactical decision is understandable because the judge would have also included evidence damaging to defendant. And the State's strong proofs contradicted defendant's version of the events leading to the homicide.

Thus, the judge did not abuse his discretion or plainly err by electing not to comment on the parties' proffered recklessness evidence. The evidence was not complex, and the jury could not have been confused by the judge's clear legal instructions.

## IV.

In Point III, defendant argues we should vacate his consecutive sentences and remand for resentencing because the judge did not provide a statement of reasons for imposing them as required by Yarbough. We agree.

In Yarbough, the Court

> established the factors a trial court must consider in determining whether to impose consecutive sentences. 100 N.J. at 643-44. A court must "articulate [its] reasons" for imposing consecutive sentences "with specific references to the Yarbough factors." State v. Abdullah, 184 N.J. 497, 515 (2005). "[A] statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions . . . [in order to] determine whether the trial court's imposition of consecutive sentences was a valid exercise of discretion." State v. Soto, 385 N.J. Super. 247, 256 (App. Div. 2006) (quoting State v. Miller, 108 N.J. 112, 122 (1987)).
>
> [State v. Chavarria, 464 N.J. Super. 1, 19 (App. Div. 2020) (alterations in original).]

As our Supreme Court recently explained:

> An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment. It is the necessary second part to a Yarbough analysis, as Miller emphasized. 108 N.J. 122 (noting importance of Yarbough factor two – placing reasons for consecutive sentence on record). Acknowledging and explaining

17

the fairness of the overall sentence imposed on the defendant advances critical sentencing policies of the Code [of Criminal Justice],[3] as amplified by Yarbough.

[State v. Torres, 246 N.J. 246, 268 (2021).]

Here, the judge did not provide any explanation for imposing two consecutive seven-year terms. While he cited Yarbough in his oral decision and in the judgments of convictions for each of the three indictments, he did not analyze the Yarbough factors. Merely citing the case is not enough.

When a sentencing "court fails to give proper reasons for imposing consecutive sentences . . . a remand [is] required for resentencing." State v. Randolph, 210 N.J. 330, 353 (2012) (second alteration in original) (quoting State v. Carey, 168 N.J. 413, 424 (2001)); see also Torres, 246 N.J. at 270 (noting that "the sentencing court's explanation of its evaluation of the fairness of the overall sentence is 'a necessary feature in any Yarbough analysis.'" (quoting State v. Cuff, 239 N.J. 321, 352 (2019))); State v. Miller, 205 N.J. 109, 129 (2011) (remanding for resentencing because Yarbough factors were not addressed). Although "sentences can be upheld where the sentencing transcript makes it

_____

3 N.J.S.A. 2C:1-1 to :104-9.

possible to 'readily deduce' the judge's reasoning . . . , those cases are the exception, not the rule." Miller, 205 N.J. at 129-30.

The State posits several reasons why consecutive terms were appropriate, pointing out that the two unlawful possession of a handgun charges were separate from the aggravated manslaughter conviction and that at least one of the handgun offenses was committed after defendant had been released pending disposition of a previous offense under N.J.S.A. 2C:44-5(h).[4] However, the judge made no mention of even these considerations. Thus, the sentence is vacated.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] In pertinent part, N.J.S.A. 2C:44-5(h) states "[w]hen a defendant is sentenced to imprisonment for an offense committed while released . . . pending disposition of a previous offense, the term of imprisonment shall run consecutively to any sentence of imprisonment imposed for the previous offense . . . ." However, the sentencing judge may impose a non-consecutive sentence if, after considering "the character and conditions of the defendant," he or she finds the "imposition of consecutive sentences would be a serious injustice which overrides the need to deter such conduct by others." Ibid. Here, the judge did not cite N.J.S.A. 2C:44-5(h) in his sentencing decision or make any pertinent findings.

A-2537-18