688 A.2d 622

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JEFFREY J. MELLO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1997—Decided February 11, 1997.

Before Judges BAIME and BRAITHWAITE.

*Robert T. Norton,* argued the cause for appellant.

*Robert W. Gluck,* Middlesex County Prosecutor, attorney for respondent (*Simon Louis Rosenbach,* Assistant Prosecutor, of counsel, *Gerard C. Vince, III,* Legal Assistant, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal presents troublesome issues pertaining to *N.J.S.A.* 2C:39–4(a). That statute provides that any person who possesses a firearm with the purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree. At issue is whether an indictment that recites the statutory language, but does not specify the unlawful purpose the accused

allegedly harbored, violates either the federal or state constitution. Also in question is whether a trial court is obliged to define with precision the elements of the crime that the defendant is alleged to have intended to commit with the weapon.

We find no constitutional prescription requiring that the indictment identify with specificity the unlawful purpose allegedly harbored by the defendant in possessing the firearm. We also conclude that the trial court did not commit reversible error in failing to precisely define the elements of the crime the defendant allegedly intended to commit with the weapon. However, we remand the matter to the Law Division to afford defendant the opportunity to file a motion pursuant to *N.J.S.A.* 2C:43–6.2 to reduce the mandatory minimum term of imprisonment required under the Graves Act.

I.

Tried by a jury, defendant was found guilty of second degree possession of a firearm for an unlawful purpose (*N.J.S.A.* 2C:39–4(a)) and third degree possession of a handgun without a permit (*N.J.S.A.* 2C:39–5(b)), but was acquitted of fourth degree aggravated assault, defined as pointing a gun at another under circumstances manifesting extreme indifference to human life, (*N.J.S.A.* 2C:12–1(b)(4)). The jury determined that defendant's intent was to use the gun against the person of another. He was thus sentenced to a term of five years with a mandatory parole disqualifier of three years on the conviction for possession of a firearm for an unlawful purpose. *N.J.S.A.* 2C:43–6(c); *see also State v. Camacho,* 295 *N.J.Super.* 585, 590, 685 *A.*2d 961 (App.Div. 1996); *State v. Latimore,* 197 *N.J.Super.* 197, 221, 484 *A.*2d 702 (App.Div.1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985). A concurrent four-year sentence was imposed on the conviction for possession of a handgun without a permit.

We need not recount the facts at length. On September 2, 1994, Brian and Allison Mourad, both members of the Federal Bureau of Investigation, were driving in the left lane of the New Jersey

Turnpike when they observed defendant's van approaching the rear of their vehicle at a high rate of speed. Because the road was very congested, the Mourads were not immediately able to maneuver their automobile into the center lane to permit defendant to pass. After finding a clearing in the traffic, Mr. Mourad pulled his automobile into the center lane. According to the Mourads, when defendant's van pulled alongside their vehicle, they saw defendant shouting in an angry manner. Both Mourads testified that defendant suddenly pointed a handgun directly at them. Mr. Mourad immediately applied the brakes, causing defendant's van to pass their car. The Mourads were able to observe defendant's license plate number which they immediately reported to the State Police.

Trooper Matthew Finnegan stopped defendant's van shortly thereafter. Although defendant denied having a gun, a search of the vehicle revealed a Smith and Wesson 9mm semi-automatic pistol behind the spare tire compartment. Defendant and his passenger, Kristen Bove, were arrested and transported to the State Police barracks. After waiving his constitutional rights, defendant admitted that he had pointed the pistol at the Mourads' vehicle. Defendant characterized the incident as a "big mistake" prompted by his anger resulting from the Mourads' blocking of the passing lane.

At trial, defendant conceded that he brandished the handgun and pointed it toward the front window. However, defendant disavowed the portion of his statement in which he admitted pointing the weapon at the Mourads. Defendant testified that he and Bove were returning from a visit to a friend in Pennsylvania when the incident occurred. They had taken the gun, which was licensed in Rhode Island where they shared an apartment, in order to engage in target practice. According to defendant, he decided to display the gun after Mr. Mourad made an obscene gesture. Defendant denied that he "trained" the pistol on the Mourads' vehicle.

The trial court's instructions on the elements of the offenses closely traced the model jury charges. The trial court's instructions on possession of a firearm for an unlawful purpose encompassed the prosecutor's request to charge respecting the requisite *mens rea.* More specifically, the trial court apprised the jury of the State's contention that "the defendant's unlawful purpose in possessing the firearm was to threaten or to terrorize or to coerce" the Mourads on the date of the incident. In differentiating the charges, the trial court instructed the jury that it was obliged to "consider whether the State ha[d] proved the specific unlawful purpose charged and not the mere unlawful possession of the weapon as alleged in Count [two] without a permit." The trial court stressed that the jury was "not to invoke [its] own notions of unlawfulness regarding the defendant's purpose," but rather was to confine itself to the State's contention in that respect.

These principles were essentially repeated when, in the course of its deliberations, the jury requested clarification. The trial court responded:

And the fourth element is that the defendant's purpose was to use the firearm unlawfully. With respect to that I have already defined purpose for you. That element of purpose to use a firearm unlawfully requires that you find that the defendant possessed that firearm with a conscious objective, design or specific intent to use it against the person or property of another in an unlawful manner as charged in the indictment and not for some other purpose.

In this case the State contends that the defendant's unlawful purpose in possessing this firearm was to threaten or to terrorize or to coerce the occupants of the red Volks with that Smith & Wesson 9mm handgun on September 2, 1994 on the New Jersey Turnpike in Cranbury Township in New Jersey to threaten or to terrorize or to coerce would be an unlawful purpose. The defense contends on the other hand that the possession if you find it exists was at all times lawful and that the brandishing or displaying openly as I am using brandishing in this situation, the brandishing of the gun without more is a lawful act and that the defendant possessed the weapon for target practice. Any lawful purpose would be a defense to the charge of possession of a firearm or weapon with a purpose to use it unlawfully against a person or property of another.

As you evaluate, ladies and gentlemen, the unlawful purpose we ask you to focus on the specific unlawful purposes alleged by the State and not to consider your own notions of the unlawfulness of the defendant's purpose, but to restrict yourself to the unlawful purpose as defined by the State and the prosecution here.

The jury returned its verdict finding defendant guilty of possession of a firearm for an unlawful purpose and possession of a handgun without a permit and not guilty of aggravated assault.

It is against this factual backdrop that we examine defendant's arguments. Defendant argues (1) the indictment was defective because it did not identify the "unlawful purpose" with which he possessed the firearm, (2) the trial court erred by denying his motion for a judgment of acquittal, (3) the trial court failed to provide sufficient guidance in its jury instructions on possession of a firearm for an unlawful purpose, and (4) the trial court improperly instructed the jury respecting the distinction between intent to use a firearm against the person or property of another.

■■■■ There is clearly no merit in defendant's claim that a motion for a judgment of acquittal should have been granted or that the distinction between use of a firearm against persons or property in the jury charge was unclear. *R.* 2:11–3(e)(2). As our brief recitation of the facts discloses, the State's evidence was substantial and the charges were properly submitted to the jury for its consideration. *R.* 3:18–1; *see also State v. Reyes*, 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967). The trial court provided special interrogatories which expressed in clear and emphatic language the distinction between the unlawful purpose to use a firearm against persons as opposed to the unlawful purpose to use a firearm against property. We address defendant's remaining points *seriatim.*

## II.

Tracking the statutory language, the first count of the indictment charged defendant with possessing a firearm "with a purpose to use it unlawfully against the person or property of another." *N.J.S.A.* 2C:39–4(a). The indictment did not specify the "unlawful purpose" with which defendant allegedly possessed the weapon. Defendant asserts that the indictment violated Article I, paragraphs 8 and 10 of the New Jersey Constitution which provide in part:

> No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury....
>
> [*N.J. Const.* of 1947, art. I, para. 8.]
>
> In all criminal prosecutions the accused shall have the right ... to be informed of the nature and cause of the accusation....
>
> [*N.J. Const.* of 1947, art. I, para. 10.]

Defendant also contends that the indictment infringed upon his rights under the federal constitution.

■ Although the United States Constitution does not impose on the states the requirement of indictment by grand jury, *see Paterno v. Lyons*, 334 *U.S.* 314, 322, 68 *S.Ct.* 1044, 1048, 92 *L.Ed.* 1409, 1416 (1948) (Frankfurter, J., concurring), the Sixth Amendment guarantees the right "to be informed of the nature and cause of the accusation" and the due process clause requires "reasonable notice and information of the specific charge." *Id.* at 320, 68 *S.Ct.* at 1047, 92 *L.Ed.* at 1415. Because the New Jersey Constitution embraces all of the protections granted by its federal counterpart and additionally requires indictment by grand jury, our discussion of the issue raised is confined to this State's organic law.

Preliminarily, we harbor reservations concerning whether defendant's claim is cognizable. *R.* 3:10–2 provides that any objections based on defects in the institution of the prosecution or in the indictment must be raised by motion before trial and that failure to do so constitutes a waiver, absent a showing of good cause. We have applied this rule with firmness. *See, e.g., State v. M.L.*, 253 *N.J.Super.* 13, 19, 600 *A.*2d 1211 (App.Div.1991), *certif. denied*, 127 *N.J.* 560, 606 *A.*2d 371 (1992); *State v. R.W.*, 200 *N.J.Super.* 560, 572, 491 *A.*2d 1304 (App.Div.1985), *modified*, 104 *N.J.* 14, 514 *A.*2d 1287 (1986); *State v. Spano*, 128 *N.J.Super.* 90, 92, 319 *A.*2d 230 (App.Div.1973), *aff'd*, 64 *N.J.* 566, 319 *A.*2d 217 (1974). Pressler, *Current N.J. Court Rules*, comment 4 on *R.* 3:10–2 (1997). Although the truncated record submitted to us does not indicate that defendant moved to dismiss the indictment, the State does not assert that defendant is precluded from advancing the contention under the rule. Moreover, the record before us

does not include transcripts of all pretrial proceedings. We thus address defendant's argument.

Many strands are interwoven to make up the composite guaranty which constitutes the right to indictment by grand jury. First, an indictment must "inform the defendant of the offense charged against him, so that he may adequately prepare his defense." *State v. LeFurge,* 101 *N.J.* 404, 415, 502 *A.*2d 35 (1986) (quoting *State v. Lefante,* 12 *N.J.* 505, 509, 97 *A.*2d 472 (1953)); *see also State v. New Jersey Trade Waste Ass'n,* 96 *N.J.* 8, 19, 472 *A.*2d 1050 (1984); *State v. Wein,* 80 *N.J.* 491, 497, 404 *A.*2d 302 (1979); *State v. Boratto,* 80 *N.J.* 506, 518, 404 *A.*2d 604 (1979); *State v. Silverstein,* 41 *N.J.* 203, 207, 195 *A.*2d 617 (1963); *State v. La Fera,* 35 *N.J.* 75, 81, 171 *A.*2d 311 (1961). Second, the indictment must be sufficiently specific to enable the defendant to avoid a subsequent prosecution for the same offense. *State v. LeFurge,* 101 *N.J.* at 415, 502 *A.*2d 35; *State v. Wein,* 80 *N.J.* at 497, 404 *A.*2d 302; *State v. La Fera,* 35 *N.J.* at 81, 171 *A.*2d 311; *State v. Lefante,* 12 *N.J.* at 509, 97 *A.*2d 472. Third, the indictment must be sufficiently precise "to preclude the possibility of a substitution by the petit jury in the criminal trial of an offense different from the crime which the grand jury in fact considered and charged." *State v. Wein,* 80 *N.J.* at 497, 404 *A.*2d 302; *see also State v. LeFurge,* 101 *N.J.* at 415, 502 *A.*2d 35; *State v. DiPaolo,* 34 *N.J.* 279, 285, 168 *A.*2d 401, *cert. denied,* 368 *U.S.* 880, 82 *S.Ct.* 130, 7 *L.Ed.*2d 80 (1961). Within this analytical framework, we find no constitutional infringement.

We are satisfied that the indictment adequately informed defendant of the charge against him. Specifically, the indictment sufficiently identified and explained the criminal offense to enable defendant to prepare a defense. Perhaps the preferable practice would be to specify in the indictment the precise unlawful purpose the defendant is alleged to have harbored when he possessed the firearm. However, our experience discloses that indictments charging this offense have traditionally employed the statutory

language.[1] New Jersey's policy of affording a defendant almost complete discovery of the prosecutor's file, including the right to move for a bill of particulars under *R.* 3:7–5, obviates the potential for prejudice.

We are equally convinced that the language of the charge was sufficiently detailed to avoid the risk of double jeopardy. Defendant contends that had he been acquitted, he nonetheless could have been again indicted and tried for essentially the same offense with the State alleging a different "unlawful purpose" in possessing the firearm. We view defendant's fear as entirely

---

[1] In most cases where the defendant is charged with possession of a firearm for an unlawful purpose in one count and a substantive crime in another, it is plain that the State contends possession of a gun was for the purpose of committing the substantive crime. As this case illustrates, this is not always the case. Here, for example, the prosecutor contended that defendant's purpose was to commit a criminal act differing from the substantive crime with which defendant was charged.

As noted previously, defendant was charged in Count III with fourth degree aggravated assault under *N.J.S.A.* 2C:12–1(b)(4). That statute provides: "a person is guilty of aggravated assault if he: (4)[k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm ... at or in the direction of another...." At trial, the prosecutor contended that defendant's purpose in possessing the gun was to threaten, terrorize, or coerce the victims. Under *N.J.S.A.* 2C:12–3(a), a person is guilty of a crime of the third degree "if he threatens to commit any crime of violence with purpose to terrorize another." Criminal coercion is defined in *N.J.S.A.* 2C:13–5(a)(1) as threatening to "[i]nflict bodily injury on anyone or commit any other offense" "with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct." Although the act of threatening, terrorizing, or coercing another may not in a technical sense be a lesser included offense of fourth degree aggravated assault, *see State v. Hammond*, 231 *N.J.Super.* 535, 545, 555 A.2d 1169 (App.Div.), *certif. denied*, 117 *N.J.* 636, 569 A.2d 1336 (1989), a violation of each statute may be based on essentially the same conduct.

We thus reiterate our conclusion that defendant was fully informed of the nature of the charges against him by reason of broad discovery provided by the prosecutor. We also observe that the defendant's acquittal of aggravated assault did not impact upon his conviction for possession of a firearm for an unlawful purpose. *See State v. Petties*, 139 *N.J.* 310, 317–18, 654 A.2d 979 (1995); *cf. State v. Diaz*, 144 *N.J.* 628, 636, 677 A.2d 1120 (1996).

ephemeral. Had defendant been acquitted, the Code's provisions barring reprosecution for the same offense would have prohibited an attempted retrial. *See N.J.S.A.* 2C:1–9(a). Wholly apart from this prohibition, the Code's mandatory joinder rule, which imposes greater restrictions on multiple prosecutions than are afforded by constitutional double jeopardy provisions, would have barred any further criminal proceeding. *See N.J.S.A.* 2C:1–8(b); *see also State v. Gregory,* 66 *N.J.* 510, 522, 333 *A.*2d 257 (1975).

■ We reject the contention that the indictment was not sufficiently specific to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge. "The ancient function of the grand jury in the Anglo–American system of justice has traditionally been to sort accusations of criminal conduct, to advance the public interest through the discovery and indictment of persons chargeable with certain crimes, and to safeguard citizens against arbitrary, oppressive, and unwarranted criminal accusations." *State v. LeFurge,* 101 *N.J.* at 418, 502 *A.*2d 35. In order to preserve this constitutional value, our Supreme Court has insisted that "the indictment must allege all the essential facts of the crime, lest an accused be brought to trial for an offense the grand jury did not find." *State v. La Fera,* 35 *N.J.* at 81, 171 *A.*2d 311. However, the Court has also expressed the view that "an indictment is merely a pleading device and never an end in itself." *State v. LeFurge,* 101 *N.J.* at 419, 502 *A.*2d 35. Considering the interrelated counts of the indictment as a whole, we are satisfied that the criminal episode charged by the grand jury was the same as that presented to the petit jury.

### III.

■ We next address defendant's contention that the trial court erred in its instructions on possession of a firearm for an unlawful purpose. Although ambiguously phrased, defendant's argument rests on the thesis that a trial court must in its instructions on unlawful purpose specifically define the elements of

the crime the accused is alleged to have intended to commit. We reject this thesis.

In *State v. Petties,* 139 *N.J.* 310, 654 *A.*2d 979 (1995), our Supreme Court held that a trial court must include in its instructions on the elements of *N.J.S.A.* 2C:39–4(a) an identification of the unlawful purpose the accused allegedly harbored in possessing the firearm. *Id.* at 320–21, 654 *A.*2d 979. In reaching this conclusion, the Court reasoned that "[a] jury is not qualified to say without guidance which purposes for possessing a gun are unlawful under *N.J.S.A.* 2C:39–4(a) and which are not." *Id.* at 320, 654 *A.*2d 979 (quoting *State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (App.Div.1989)). Noting that Chapter 39 of the Code represents a very carefully structured grid of gun controls, *id.* at 314–15, 654 *A.*2d 979 (quoting *State v. Ingram,* 98 *N.J.* 489, 495 n. 1, 488 *A.*2d 545 (1985)), the Court was concerned that, without guidance, the jury might consider its own notions of the unlawfulness of the defendant's purpose in possessing the firearm. *Id.* at 320, 654 *A.*2d 979.

We do not read *Petties* as mandating that in every case it is incumbent upon the trial court to define with precision the exact elements of the crime the defendant is alleged to have intended to commit with the firearm. As the Court was careful to note, "[t]he statute does not require the State to obtain a conviction for [the] underlying unlawful conduct," *id.* at 315, 654 *A.*2d 979, and thus the prosecutor need not "show specifically which completed crime the actor intended [to commit] with the gun[ ]." *Id.* at 316, 654 *A.*2d 979.[2]

---

[2] In *State v. Butler,* 27 *N.J.* 560, 593–94, 143 *A.*2d 530 (1958), the Supreme Court held that a trial judge must instruct the jury as to the elements of the underlying felony in a felony murder case. However, the question presented here is distinguishable. Under felony murder, the commission of the underlying felony constitutes an essential element of the crime. Here, the commission of a completed crime is not a predicate to a conviction for an unlawful purpose. *See State v. Diaz,* 144 *N.J.* 628, 636, 677 *A.*2d 1120 (1996); *State v. Petties,* 139 *N.J.* at 315, 654 *A.*2d 979.

 We do not suggest that it is improper for a trial court to specifically define the elements of the crime the defendant allegedly intended to commit with the firearm. In many, if not most cases, that might well be the better course. However, possession of a firearm for an unlawful purpose is a preparatory crime and the unlawful purpose of the actor "may be independent of the commission of [a] substantive offense." *State v. Diaz,* 144 *N.J.* at 636–37, 677 *A.*2d 1120. It may be impossible in some cases to define with precision the exact crime or crimes the defendant intended to commit with the firearm. An example of such a scenario was described in *Petties.* The Court observed:

> If a search were to disclose large quantities of drugs and cash in a home, one might infer that any handguns found in the home were possessed for the unlawful purpose of aiding drug trafficking. Does that mean that a prosecutor would have to show specifically which completed crime the actor intended with the guns? We think not.
>
> [*State v. Petties,* 139 *N.J.* at 316, 654 *A.*2d 979.]

In a similar vein, we have sustained unlawful purpose convictions where several youths were found in possession of weapons at 3:00 a.m. in a parked car with the engine running and the headlights off. *State v. Latimore,* 197 *N.J.Super.* 197, 484 *A.*2d 702. We doubt the need in such a case for the trial court to define with exactitude the precise elements of each crime that the defendants in that situation may have intended to commit. Instead, a reference to the generic offenses of robbery, theft or burglary, without specific recital of the precise elements of those offenses, would seem to suffice.

We need not dwell upon the subject. The facts of this case are simple and should yield simple results. The trial court's references to the State's contention that defendant brandished the firearm in order to terrorize, threaten or coerce the victims constituted a sufficient description of the prescribed purpose required for a conviction. The trial court "relate[d] the specific unlawful purpose charged to the facts of the case," *State v. Petties,* 139 *N.J.* at 321, 654 *A.*2d 979, and "mold[ed] the instruction in a manner that explain[ed] the law to the jury in the context of the material facts." *State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A.*2d

119 (1988). We find no error capable of producing an unjust result. *R.* 2:10–2.

## IV.

Defendant's remaining arguments respecting the jury instructions do not require extended discussion. Defendant contends that the trial court failed to differentiate the possessory weapon offenses in its jury instructions. He also contends that the trial court erred by failing to charge self-defense as a justification for possession of a firearm for an unlawful purpose.

The trial court's charge properly distinguished the crimes of possession of a firearm for an unlawful purpose and possession of a handgun without a permit. At the conclusion of the instructions, the jury was told that it was obliged to consider whether the State had proven the "specific unlawful purpose charged" and not "the mere unlawful possession of the weapon ... without a permit."

We are also unpersuaded by defendant's claim that the trial court should have instructed the jury on the justification of self-defense. There is no evidence in the case that defendant "anticipatorily arm[ed] [him]self on the apprehension of future danger." *State v. Harmon,* 104 *N.J.* at 208, 516 *A.*2d 1047. Moreover, defendant's attorney specifically asked the trial court not to charge the jury on the subject. *See State v. Corsaro,* 107 *N.J.* 339, 345–46, 526 *A.*2d 1046 (1987). No error was committed.

## V.

Although defendant argued at sentencing that the Graves Act was not applicable, he did not request that the sentence be reviewed under *N.J.S.A.* 2C:43–6.2, which allows the assignment judge to reduce the mandatory parole ineligibility term with consent of the prosecutor. *See State v. Alvarez,* 246 *N.J.Super.* 137, 140, 586 *A.*2d 1332 (App.Div.1991). We note that prior to this incident defendant led a law abiding life. At oral argument, the

prosecutor observed that this was defendant's first brush with the law and, the crimes committed, while very serious, appeared aberrational. Under these circumstances, the interests of justice militate in favor of remanding the matter to the Law Division to afford defendant the opportunity to seek the prosecutor's consent and move for leniency under *N.J.S.A.* 2C:43–6.2. Like the prosecutor, we do not deprecate the seriousness of the crimes committed by the defendant. But it is fair to say that, within the constellation of Graves Act cases, this may be one deserving of some leniency.

The judgment of convictions is affirmed, but the matter is remanded to the Law Division for further proceedings consistent with this opinion.

Remanded.