836 A.2d 814 (2003)
364 N.J. Super. 376
STATE of New Jersey, Plaintiff-Respondent,
v.
William JONES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 2003.
Decided November 19, 2003.
*815 Yvonne Smith Segars, Public Defender, attorney for appellant (Diane Toscano, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Paul H. Heinzel, Deputy Attorney General, of counsel and on the brief).
*816 Before Judges PETRELLA, WEFING and COLLESTER.
WEFING, J.A.D.
Defendant was indicted for two counts of aggravated assault, N.J.S.A. 2C:12-1b(1) and -1b(2); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; unlawful possession of a weapon, N.J.S.A. 2C:39-5b; and possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7. Tried to a jury, defendant was acquitted of both aggravated assault counts and convicted of the remainder of the charges. At sentencing, the trial court granted the State's motion to sentence defendant to an extended term[1] and sentenced defendant to twenty years in prison, with a ten-year period of parole ineligibility, for possession of a weapon for an unlawful purpose and a concurrent five-year term for unlawful possession of a weapon. Defendant was sentenced to a consecutive ten years, with a five-year period of parole ineligibility, for possession of a weapon by a convicted felon. Defendant's sentence thus aggregated thirty years in prison, with a fifteen-year period of parole ineligibility. Defendant appeals and we reverse.
On December 15, 1999, Monique Saxon was at home at her apartment at 202 Whalers Drive in Pleasantville. Ms. Saxon lived there with her seven-year-old daughter, Alia, and a roommate, Yulen Owens. Two friends came over that evening, Jamel Coleman and Jonathan Miller. A little before midnight, Ms. Saxon was watching television with the visitors and Ms. Owens was in her room. Alia was asleep on the couch.
As the doorbell rang, Ms. Saxon got up and went to the bathroom. She heard the sounds of a scuffle. She opened the door and looked out. She saw Jamel struggling with a man with a gun. She grabbed her daughter from the couch and retreated to the bathroom. She heard the sound of a gun firing. Police responded promptly to reports of gunfire. They found Miller with a gunshot wound in his thigh and a black automatic handgun on the floor.
Miller testified that Coleman had answered the door and that an older black male wearing a security guard uniform and brandishing a gun had tried to force his way in. Coleman struggled with the intruder and Miller went to his assistance. The gun discharged, and Miller was struck in the leg. The intruder left.
The police searched the surrounding area. They found a black baseball cap, a pair of glasses and a collapsible baton. Defendant was seen sitting on a nearby bench and the police approached him. He was sweating profusely despite the fact that it was a winter night. He was wearing a gray jump suit over a light blue shirt which had epaulets on the shoulders and blue pants with a yellow stripe on the sides. Under the bench was a black bag which contained duct tape. A pair of silver-colored handcuffs were nearby. The police took defendant back to Ms. Saxon's apartment and all three immediately identified him as the perpetrator.
Defendant denied any involvement. He testified that he was at the apartment complex to borrow a car from a man he knew as "Jewel." He did not know Jewel's last name or the number of the apartment in which he lived. He denied telling the police that his brother lived at the complex and said he had not been dressed as a security guard. He said the bag and the handcuffs did not belong to him. He *817 attributed his sweating to the fact he has diabetes and had not eaten dinner.
Defendant raises the following arguments on appeal:
POINT I
THIS COURT'S DECISION IN STATE V. WRAY REQUIRES THAT DEFENDANT'S CONVICTIONS BE REVERSED FOR NEW, BIFURCATED TRIALS. (Not Raised Below)
POINT II
THE PROSECUTOR'S SUGGESTION IN SUMMATION, THAT DEFENDANT COULD HAVE HAD THE GUN TESTED FOR FINGERPRINTS, IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF, THEREBY DENYING DEFENDANT A FAIR TRIAL
POINT III
THE EVIDENCE AND ARGUMENTS THAT DEFENDANT WAS THWARTED IN HIS PLAN TO COMMIT A HOME INVASION ROBBERY, AND THE JURY INSTRUCTION WHICH ACCEPTED THAT ARGUMENT, DENIED DEFENDANT HIS RIGHT TO INDICTMENT AND DUE PROCESS OF LAW. (Raised In Part Below)
A. The Prosecutor Violated Defendant's Right to Indictment and His Due Process Right to Be Advised of the Charges Against Him
B. The Court's Jury Instruction on Count Three Constituted an Impermissible Substantive Amendment to the Indictment
POINT IV
EVIDENCE THAT DEFENDANT WAS UNEMPLOYED AT THE TIME OF THE OFFENSE DENIED DEFENDANT A FAIR TRIAL
POINT V
DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW WHEN HE WAS FORCED TO WEAR A COUNTY JAIL IDENTIFICATION BAND ON HIS WRIST DURING TRIAL
POINT VI
DEFENSE COUNSEL'S FAILURE TO REQUEST A WADE HEARING TO CHALLENGE THE STATES [sic] IDENTIFICATION EVIDENCE DENIED DEFENDANT THE EFFECTIVE ASSISTANCE OF COUNSEL. (Not Raised Below)
POINT VII
NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Raised in Part Below)
A. The Prosecutor's Remarks Equated the Jury's Duty with a Verdict of Guilty.
B. The Prosecutor Misstated the Evidence. (Not Raised Below)
C. The Prosecutor Commented on Facts Not in Evidence and Vouched for the Credibility of State's Witnesses. (Not Raised Below)
I. The State Elicited Testimony From Defendant Characterizing a State's Witness As A Liar. (Not Raised Below)
POINT VIII
DEFENDANT'S EXTENDED TERM SENTENCE ON COUNT 3 MUST BE VACATED PURSUANT TO APPRENDI AND JOHNSON, AND THE MAXIMUM CONSECUTIVE SENTENCE ON COUNT 5 MUST BE REMANDED FOR RESENTENCING
A. The Imposition of an Extended Term as a Repeat Violent Offender in this Case Violates the Due Process Clause of the Fourteenth Amendment Because the Finding That Defendant *818 Possessed the Firearm for Use Against the Person of Another Was Not Mad [sic] by the Jury Beyond a Reasonable Doubt. (Not Raised Below)
B. The Court's Stated Reason for Imposing Consecutive Sentences Was Simply an Element of the Offense, and the Consecutive Sentence on Count 5 Must be Remanded for Resentencing
C. The Court Sentenced Defendant to the Maximum Allowable Sentences Based on His Perception That Defendant was Guilty of Uncharged Offenses, and Offenses of Which He Was Acquitted
We only find it necessary to comment at length on defendant's second argument.
Defendant contends that a comment by the prosecutor during his summation unfairly suggested to the jury that he had a burden to introduce evidence. We have concluded we are compelled to agree.
Defense counsel questioned the various police witnesses who testified whether there had been any attempt to obtain fingerprints from the gun found in Ms. Saxon's apartment and the answer was, invariably, there had been none. One police witness testified to the difficulty of obtaining any usable prints from the surface of a handgun. Within his summation, defense counsel argued to the jury that this omission was a weakness in the State's case. The prosecutor, in his summation, made the following remarks:
And you know what, this shouldn't be too hard to believe [the failure to look for fingerprints], you look for fingerprints when you don't have a suspect. But when you have the evidence you have against this guy, including a positive identification made unequivocally within 15 minutes after he committed this event, that's not the time to look for fingerprints. And while the defense never has any burden of proof, when they put on a case stop and ask yourself why isn't it they dusted the gun for prints to disprove that his fingerprints were on there? Maybe the defendant knows something we don't, that it is his gun.
Defense counsel objected at the end of the summation, but the trial court overruled the objection and refused to issue a corrective instruction.
We consider the remark to be so clearly erroneous and so capable of affecting the jury's deliberations that we are constrained to reverse defendant's convictions and remand the matter for a new trial.
More than forty years ago, Justice Francis wrote, "Appellate courts continue to be too much occupied in review of prosecutor's summations." State v. Thornton, 38 N.J. 380, 400, 185 A.2d 9, 20 (1962). The issue, unfortunately, has not abated; we have been compelled to note, rather, that it is an issue that arises with "increasing frequency." State v. Jenkins, 299 N.J.Super. 61, 69, 690 A.2d 643, 647 (App.Div.1997).
It is, of course, a basic tenet of our criminal jurisprudence that a defendant has no obligation to establish his innocence. That applies with equal force to the situation of a defendant assuming the stand to testify and the situation of a defendant proffering affirmative evidence on his own behalf. He has no obligation to do either, and his failure in either regard cannot affect a jury's deliberations.
The prosecutor's remark completely violated that fundamental principle. Defendant had no obligation to perform fingerprint tests upon the weapon to establish that it was not his, and the prosecutor should not have implied to the jury that defendant's failure to perform such testing indicated a fear of the possible results.
*819 The error of the remark was in no way lessened by the introductory reminder that a defendant has no burden of proof. Indeed, the error is, to some extent, almost magnified by that statement for it could be understood to imply that if a defendant presents evidence on one question, he must address all aspects of the case, even those which the State has not addressed.
When a prosecutor's comments infringe upon such a basic right, "the facts and circumstances must be closely scrutinized to determine whether the defendant's... right to a fair trial [has been] compromised." State v. Cooke, 345 N.J.Super. 480, 486, 785 A.2d 934, 938 (App.Div.2001), certif. denied, 171 N.J. 340, 793 A.2d 718 (2002). "Every time a prosecutor stresses a failure to present testimony, the facts and circumstances must be closely examined to see whether the defendant's right to remain silent has been violated." State v. Sinclair, 49 N.J. 525, 549, 231 A.2d 565, 577 (1967). There are, of course, instances in which we have deemed a prosecutor's comments to be improper but have not reversed a defendant's conviction. State v. Jenkins, 349 N.J.Super. 464, 793 A.2d 861 (App.Div.2002). Often in such cases, the trial court has given curative instructions to alleviate any prejudice. Id. at 478, 793 A.2d at 870; State v. Sheika, 337 N.J.Super. 228, 250, 766 A.2d 1151 (App.Div.2001). There are other instances, however, where the offending remarks cannot be disregarded.
Even if the evidence were overwhelming, that could never be a justifiable basis for depriving a defendant of his or her entitlement to a constitutionally guaranteed right to a fair trial. The impact of violating a defendant's right to a fair trial cannot be measured by, or weighed against, the quantum of evidence bearing upon his or her guilt.
[State v. Frost, 158 N.J. 76, 87, 727 A.2d 1, 6 (1999).]
The determination of an appropriate response by an appellate court to a prosecutor's improper comments in summation requires consideration of three factors:
(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.
[Id. at 83, 727 A.2d at 4.]
Here, defense counsel did make a timely objection, immediately at the end of the prosecutor's summation. The remarks were not withdrawn, however, and the trial court did not strike them from the record and instruct the jury to disregard them. The prejudice inherent in the suggestion that defendant purposely may have avoided arranging for a fingerprint test of this gun cannot be considered to have been erased by the court's general instruction on the presumption of innocence contained within its overall charge to the jury.
We are, moreover, not in a position to conclude on the basis of a cold record alone whether the State's proofs can fairly be described as "overwhelming." It can hardly escape our notice, for instance, that defendant was acquitted of the two counts alleging aggravated assault against Jonathan Miller, even in the face of the testimony of Miller and Saxon identifying defendant as the attacker.
We turn briefly to defendant's remaining arguments, many of which do not require any comment in light of our disposition of this matter.
When defendant's trial commenced, the fifth count of the indictment, charging possession of a gun by a person previously *820 convicted, in violation of N.J.S.A. 2C:39-7, was bifurcated from the remaining charges to avoid the obvious prejudice defendant might suffer if the jury were to learn of his criminal past without his having taken the stand. State v. Ragland, 105 N.J. 189, 192, 519 A.2d 1361, 1362 (1986).
At the end of the State's case, however, defendant elected to testify. After a Sands hearing, State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978), the trial court determined that defendant's five prior criminal convictions would be admissible. The trial court also determined that the jury would only be advised of the degree of the particular crimes involved and the penal consequences. State v. Brunson, 132 N.J. 377, 625 A.2d 1085 (1993). The trial court also held, without objection, that there was no longer a need to bifurcate the fifth count and that charge would be submitted to the jury for decision along with the remainder of the offenses.
Defendant now argues that was erroneous under State v. Wray, 336 N.J.Super. 205, 764 A.2d 467 (App.Div.2001), decided shortly before the trial of this matter. We disagree for we consider Wray distinguishable. Defendant in that matter was charged with unlawful possession of a weapon, N.J.S.A. 2C:39-5b, and possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7. Id. at 206, 764 A.2d at 467. The two counts were bifurcated for purposes of trial. Ibid. After defendant had testified, and was cross-examined about his prior record to impeach his credibility, the trial court determined there was no longer a need for bifurcation because the jury had learned of those prior convictions. We held it was "error for the trial judge to `reconstitute the case' by submitting the possession of a weapon by a convicted felon charge to the jury once defendant had testified." Id. at 212, 764 A.2d at 471.
Here, however, the trial court announced its decision prior to defendant ever taking the stand. Defendant was in no way surprised by the decision of the court in this regard but took the stand fully apprised of the procedural posture of the matter. "Charges [of possession of a weapon by a convicted felon] are severed for the protection of the defendant. Severance is customary and presumably automatic where it is requested because of the clear tendency of the proof of the felony conviction to prejudice [the trial]." State v. Ragland, supra, 105 N.J. at 194, 519 A.2d at 1363. Here, however, the need to protect defendant from that prejudice disappeared once defendant decided to testify. There was, thus, no longer need for severance. Further, defendant completely acquiesced in this procedural modification. We can perceive no unfairness to defendant in what occurred. The lack of prejudice is demonstrated by the jury acquitting defendant of the two counts of aggravated assault.
We reject defendant's argument that the prosecutor's comments about "home invasion robbery" and the court's reference to that in its discussion of possession of a weapon for an unlawful purpose in some manner deprived him of his right to be advised of the charges against him or represented an impermissible amendment of the indictment. In State v. Mello, 297 N.J.Super. 452, 460-63, 688 A.2d 622, 626-28 (App.Div.1997), we clearly rejected such a contention.
Nor was defendant deprived of a fair trial because the State was allowed to elicit testimony that defendant told the police when he was arrested that he was unemployed. That testimony was relevant in light of the evidence that defendant was dressed in the uniform of a security guard at the time of his arrest; if he were not *821 employed as a security guard, he would have no reason to wear such a uniform.
Defendant's contentions relating to the jail identification band and the failure to request a Wade hearing are moot. We do note, however, the thoroughness with which the trial court addressed the first question to demonstrate that defendant was in no way prejudiced.
Defendant's remaining complaints about prosecutorial misconduct are not supported by the record and do not warrant any discussion. Finally, defendant's complaints about his sentence are moot in light of the retrial which will be required.
Reversed and remanded for further proceedings.
NOTES
[1] Defendant was subject to an extended term under N.J.S.A. 2C:44-3a and N.J.S.A. 2C:43-7.1b.