NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1348-19T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ALEXANDER A. ANDREWS,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

June 15, 2020

APPELLATE DIVISION

Argued telephonically April 29, 2020 –
Decided June 15, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Middlesex County,
Indictment No. 17-09-1005.

Joie D. Piderit, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause
for appellant (Christopher L.C. Kuberiet, Acting
Middlesex County Prosecutor, attorney; Joie D. Piderit,
of counsel and on the brief).

Scott Michael Welfel, Assistant Deputy Public
Defender, argued the cause for respondent (Joseph E.
Krakora, Public Defender, attorney; Scott Michael
Welfel, of counsel and on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

By leave granted, the State appeals from the October 21, 2019 Law Division order granting defendant's motion to overrule the State's rejection of his petition for a Graves Act waiver pursuant to N.J.S.A. 2C:43-6.2, "which embodies the so called 'escape valve' to the mandatory sentence requirements otherwise embodied in the Graves Act," N.J.S.A. 2C:43-6(c). State v. Alvarez, 246 N.J. Super. 137, 139 (App. Div. 1991). We affirm.

Defendant was charged in a Middlesex County indictment with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and fourth-degree possession of prohibited devices, N.J.S.A. 2C:39-3(f). By letter dated January 3, 2018, defendant asked the prosecutor to consider filing a motion with the Assignment Judge for a waiver of the mandatory minimum Graves Act sentence pursuant to N.J.S.A. 2C:43-6.2. In support, defendant stated he was twenty-seven years old, and had "no prior juvenile dispositions[,] . . . municipal or trial court convictions," and "no history of drug or alcohol addiction." He was a gainfully employed "[h]igh [s]chool graduate," with "two young children," and "full custody" of one of them. He explained that the charges stemmed from his apprehension "for a traffic warrant," during which "police discovered a weapon on his person" that he had "purchased . . . that day"

A-1348-19T1

because "he had been shot at the night before by his girlfriend's ex-boyfriend and was fearful for his life." He submitted character references from supervisors at work, members of his church, and his mentor, who was also a police officer.

In a May 16, 2018 response, the prosecutor determined "the interests of justice [did] not warrant a relaxation of the Graves Act provisions" and "reject[ed] defendant's petition for a . . . waiver." The prosecutor disagreed with defendant's recitation of his criminal history, describing it as "limited" but "concerning." According to the prosecutor,

> [a]lthough these are defendant's only charges of an indictable nature, his first contact with the criminal justice system occurred as a juvenile in 2005 when he was charged with disorderly conduct. Defendant was successfully diverted and the charge was dismissed. As an adult, defendant has incurred three local ordinance violations and one disorderly persons conviction. Notably, the facts underlying defendant's June 3, 2013, local ordinance violation for loitering involved him assaulting the victim, C.V., by punching her in the stomach during a domestic dispute. Similarly, defendant was convicted of simple assault on May 5, 2014, after again assaulting C.V. by striking her about the body with a closed fist.

The prosecutor also determined

> the facts of th[e] case militate against a Graves waiver. Here, the fact that defendant illegally purchased a handgun on the street in response to an alleged shooting is incredibly troubling. Not only did defendant illegally purchase that handgun, but he proceeded to load it with illegal, maximum-injury producing, body armor-piercing ammunition and concealed it on his person.

3

Defendant's possession of a firearm presents a grave and clear danger to not only the community, but also to himself. To make matters worse, defendant did not report the prior alleged shooting to the police and admitted that he intended to use a form of "vigilante justice" while out and about on a public street. Although defendant readily admitted his illegal possession of a loaded handgun to police and alleged the handgun was solely for his protection, had defendant not been arrested on that same day of its purchase, the State can only imagine what could have transpired that night. This behavior, coupled with defendant's criminal history, runs counter to the positive reputation suggested and encompassed in the provided letters and illustrates that there is a strong need to deter defendant from reoffending.

. . . . Condoning such use of a firearm and blatant disregard of the law can only lead to "vigilante justice," thus putting the public in peril and eroding the criminal justice process.

Defendant moved before the Assignment Judge "to overrule the State's objection to his request for a Graves Act Waiver," asserting the rejection was "inconsistent" with prior decisions and "constituted a patent and gross abuse of discretion." In support, defendant disputed the State's recitation of his prior criminal history, but asserted that its reliance on his "criminal past . . . demonstrate[d] the State's arbitrary and disparate decision making" because the State had "a history of requesting waivers for individuals with prior police contacts, arrests, and adjudications." Further, according to defendant, the State's reliance on "the facts of th[e] case" was predicated on a false premise because

"there [were] no facts . . . to suggest" defendant "was prepared to engage in 'vigilante justice.'" Additionally, defendant pointed out that given the proposed mitigating factors,[1] "specific deterrence [was] not needed" and "general deterrence alone should not support a denial," otherwise, "no defendant would be eligible for a waiver."

The State opposed defendant's application, noting this was "not a case where defendant ha[d] no prior involvement with the system, or . . . lawfully acquired and possessed the firearm in New Jersey or another state," or possessed the gun "in New Jersey . . . incident to lawful travel," or possessed an "unloaded" handgun. Although the State did not explicitly address the mitigating factors proffered by defendant, the State reiterated that defendant had "a juvenile contact" and "four prior municipal convictions," consisting of a 2009 "disorderly

---

[1] Defendant specifically relied on mitigating factors one, N.J.S.A. 2C:44-1(b)(1) ("defendant's conduct neither caused nor threatened serious harm"); two, N.J.S.A. 2C:44-1(b)(2) ("defendant did not contemplate that his conduct would cause or threaten serious harm"); four, N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify [defendant's] conduct, though failing to establish a defense"); seven, N.J.S.A. 2C:44-1(b)(7) ("defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"); eight, N.J.S.A. 2C:44-1(b)(8) ("defendant's conduct was the result of circumstances unlikely to recur"); nine, N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of [defendant] indicate that he is unlikely to commit another offense"); ten, N.J.S.A. 2C:44-1(b)(10) ("defendant is particularly likely to respond affirmatively to probationary treatment"); and eleven, N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of [defendant] would entail excessive hardship to himself or his dependents").

conduct" conviction, a 2013 "simple assault" conviction and "local ordinance violation," and a 2014 "simple assault" conviction. In addition, the State pointed out that defendant "ha[d] a pending matter" that he recently "picked up while he was on the highest level of pre-trial monitoring" for the instant offenses. According to the State, defendant "was arrested . . . after a motor vehicle stop . . . in the middle of the night when he was supposed to be on home detention," resulting in the revocation of his pretrial release.

During oral argument, the judge expressed concern about the State "treating similarly situated people differently" as evidenced by the fact that Graves waivers were granted "to people who . . . had . . . more significant prior contact with the system" than defendant. When the prosecuting attorney expressed ignorance about such cases, the judge was confounded that the State was not maintaining "[its] own chart," as the court was, in order to conduct "a straightforward . . . evidence[-]based" comparative analysis among the cases.

Following oral argument, the judge granted defendant's application. In a written statement of reasons accompanying the order, the judge determined the State's denial was based on defendant's "criminal record" and his "rationale for possessing the weapon, which was self-protection." Regarding defendant's criminal record, the judge stated:

> The court requested [defendant's] current and complete
> criminal record based on alleged discrepancies with

respect to his record. In the original letter denying [defendant's] Graves application, the State acknowledged that [defendant] had not committed any prior indictable offenses. However, they based their decision on a court generated document that may have overstated [defendant's] criminal record. The State also focused on the fact that following the weapons charge, when [defendant] was placed on home detention, he was arrested during a motor vehicle stop for a narcotics offense, which resulted in the revocation of his pretrial release. The copy of the criminal record provided to [defendant] did not contain the offenses that were listed in the court generated document.

A review of [defendant's] actual criminal history record disclosed the following:

1. May 21, 2009, Petty Disorderly offense for Improper Behavior, in violation of N.J.S.A. 2C:33-2(a)(2). Disposition: Guilty.

2. April 25, 2013, Disorderly Person offense for Assault, in violation of N.J.S.A. 2C:12-1(a). Disposition: Guilty.

3. June 19, 2013, Summons for a municipal ordinance violation, charging [defendant] with "Loud Radio." Disposition: Guilty.

4. August 31, 2013 Disorderly Person offense for Assault, in violation of N.J.S.A. 2C:12-1(a). Disposition: Not Guilty.

5. August 29, 2018, Disorderly Persons offense Failure to Make Lawful Disposition in violation of N.J.S.A. 2C:35-10(c). Disposition: Dismissed.

[Defendant] had a 2005 juvenile charge for Disturbing the Peace, which was dismissed on

December 19, 2006. His record also indicates two Final Restraining Orders, which were both dismissed against [defendant] in 2015.

None of the offenses of which [defendant] was found guilty were indictable offenses. The State has granted Graves [w]aivers to individuals with more substantial criminal records than [defendant].

Next, turning to defendant's purpose in possessing the gun, the judge implicitly rejected the State's "vigilante justice" characterization, and addressed the State's rejection of defendant's "'self-protection' rationale"[2] as follows:

[T]he "self-protection" rationale was accepted by the State in the following matters:

1. In the matter of State v. Isaiah Martinez, Indictment No. 18-03-473, after a [m]otor [v]ehicle stop, a handgun was recovered from the trunk of Mr. Martinez's vehicle. The gun was wrapped in a pair of camouflage pants. Mr. Martinez claimed he was travelling from Florida to New Jersey and stated he carried the handgun for protection as it is legal to do so in Florida. The State granted a Graves [w]aiver and recommended a sentence of non-custodial probation. At the time of the offense, Mr. Martinez had three out-of-state convictions for Possession of Marijuana, Simple Assault and a Motor Vehicle traffic violation.

2. In the matter of State v. Gregory Horton, Indictment No.[] 16-08-1411, police were

---

[2] See State v. Harmon, 104 N.J. 189, 207 (1986) ("If an individual's possession of a firearm is motivated honestly by a self-protective purpose, then his conscious object and design may remain not to do an unlawful act, and a material element of a [N.J.S.A. 2C:39-4(a)] violation has not been met.").

dispatched on a dispute call. While [en route], officers were advised that Mr. Horton was on the premises with a shotgun. As officers approached the residence, Mr. Horton ran out the back door. When asked about the shotgun, Mr. Horton advised the shotgun was in his van, which was parked on the property. Mr. Horton advised officers that the loaded shotgun was for protection from his girlfriend's family and friends, who he claimed threatened to "get him." At the time of the offense, Mr. Horton had two municipal court convictions for Shoplifting and Sell Paging Device to Person Under [eighteen]; one Local Ordinance violation for Snow Removal; one PTI completion for Poss CDS/Analog Schd. I II Ill IV; and two Misdemeanor convictions in North Carolina for Habitual Felon Driving While Impaired and Driving While License Revoked.

3.     In the matter of <u>State v. George James</u>, Accusation No. 17-02-235, after a [m]otor [v]ehicle stop, officers noticed a rolled marijuana cigarette in the ashtray and the odor of raw marijuana. A search of [the] vehicle's trunk revealed a Beretta .22 Bobcat pistol loaded with five rounds in the chamber. Mr. James indicated that he did not have a permit for the gun and stated that his cousin was murdered in 2016 and his cousin's brother was recently jumped. The gun was for his protection. At the time of the offense, Mr. James had one successful juvenile diversion for Shoplifting-Retail.

The judge explained that while defendant was "foreclosed from obtaining any discovery from the prosecutor's office to determine if the denial violate[d] the standard set forth in <u>Alvarez</u>," as the judge who "reviews all waiver cases,"

9

he was "in the best position to determine whether the Alvarez standard has been violated." The judge determined that based on the disparity between the cases, and the "apparent discrepancy" in the State's assessment of defendant's criminal record "coupled with [defendant's] relatively minor criminal record," the State's "denial of a Graves [w]aiver" was "arbitrary, capricious, or unduly discriminatory" and thus fell "within the Alvarez proscription."

On appeal, the State argues the judge "abused his discretion," "misapplied the clear dictates" of Alvarez and State v. Benjamin, 228 N.J. 358 (2017), "substitute[ed] his judgement for that of the prosecutor," and rendered a decision that "was based on an unidentified and undisclosed 'infamous chart,'[3] which apparently contained summaries of other unrelated cases in which the State permitted a Graves Act waiver."

"Enacted in 1981 as 'a direct response to a substantial increase in violent crime in New Jersey,' the Graves Act is intended 'to ensure incarceration for those who arm themselves before going forth to commit crimes.'" State v. Nance, 228 N.J. 378, 390 (2017) (quoting State v. Des Marets, 92 N.J. 62, 68 (1983)).

> As amended, the statute applies to a defendant who is convicted of one of the offenses enumerated in the statute "who, while in the course of committing or

_____

[3] At a subsequent proceeding, the prosecuting attorney asked the judge to make the chart a "part of the record." The judge denied the request.

attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in [N.J.S.A.] 2C:39-1(f)."

[Ibid. (alteration in original) (quoting Des Marets, 92 N.J. at 64 n.1).]

The Graves Act requires the imposition of a minimum term "fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater, or [eighteen] months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole." N.J.S.A. 2C:43-6(c). "To mitigate the undue severity that might accompany the otherwise automatic application of the mandatory minimum sentence under the Graves Act," N.J.S.A. 2C:43-6.2 (Section 6.2) provides "a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice." Benjamin, 228 N.J. at 368.

Pursuant to Section 6.2,

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under . . . [N.J.S.A. 2C:43-6(c)] for a defendant who has not previously been convicted of an offense under that subsection . . . does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to [N.J.S.A. 2C:43-2(b)(2)] or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole.

[N.J.S.A. 2C:43-6.2.]

11

In accordance with Alvarez, defendants may "appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor." Benjamin, 228 N.J. at 364. In reviewing a prosecutor's decision on a defendant's application for pre-trial intervention (PTI), our Supreme Court "defined the 'patent and gross abuse of discretion' standard" as requiring a party to "show that the prosecutor's decision failed to consider all relevant factors, was based on irrelevant or inappropriate factors, or constituted a 'clear error in judgment.'" State v. Nwobu, 139 N.J. 236, 247 (1995) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).

To make the showing delineated in Alvarez, "a defendant must, by motion to the assignment judge, demonstrate 'arbitrariness constituting an unconstitutional discrimination or denial of equal protection' in the prosecutor's decision." Benjamin, 228 N.J. at 372 (quoting Alvarez, 246 N.J. Super. at 148). See State v. Sutton, 80 N.J. 110, 119-20 (1979) (holding that in order to make a similar showing in a challenge to the prosecutor's denial of PTI, the defendant could not prevail merely because she could show that the prosecutor approved PTI for others "charged with similar offenses" but needed to prove that she received "less favorable treatment than identically situated individuals."). "Once a defendant makes this threshold showing, the defendant can obtain a hearing to review the prosecutor's decision if the assignment judge concludes

that the 'interests of justice' so require." Benjamin, 228 N.J. at 372-73 (quoting Alvarez, 246 N.J. Super. at 148-49).

In 2008, the New Jersey Attorney General issued a directive to prosecutors "'to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing' the Graves Act." Id. at 369 (quoting Attorney General's Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008) (the Directive)). "The Directive instructs a prosecutor contemplating a waiver to 'consider all relevant circumstances concerning the offense conduct and the offender,' such as applicable aggravating and mitigating factors under [N.J.S.A.] 2C:44-1 and the likelihood of the defendant's conviction at trial." Ibid. (quoting the Directive at 12).

Under the Directive, unless (1) the defendant is ineligible for a waiver due to a prior conviction for a Graves Act offense, (2) there is a "substantial likelihood that the defendant is involved in organized criminal activity," (3) "the prosecuting agency determines that the aggravating factors applicable to the offense conduct and offender outweigh any applicable mitigating circumstances," or (4) "the prosecuting agency determines that a sentence reduction to a one-year term of parole ineligibility would undermine the investigation or prosecution of another," "[t]he prosecuting agency as part of the

State's initial plea offer shall agree to move pursuant to [N.J.S.A.] 2C:43-6.2 for a reduction to a one-year term of parole ineligibility." Directive at 7-14.

Significantly, the Directive also mandates specific record-keeping by prosecutors, including requiring documentation of the prosecuting agency's "analysis of all of the relevant aggravating and mitigating circumstances, whether or not the agency moves for or approves a waiver or reduction pursuant to [N.J.S.A.] 2C:43-6.2," and the maintenance of "[a] copy of all case-specific memorializations . . . in a separate cumulative file in order to facilitate such audits as the Attorney General may from time-to-time direct to ensure the proper and uniform implementation of th[e] Directive." Benjamin, 228 N.J. at 369-70 (quoting the Directive at 13-14).

In Benjamin, the Court held that in a challenge to "the denial of a Graves Act waiver in an Alvarez motion," defendants "seeking to demonstrate that the prosecutor acted arbitrarily" were not "entitled to discovery of the Directive-mandated 'case-specific memorializations' and cumulative files of prosecutorial decisions . . . for cases other than their own." Id. at 373-75. The Court reasoned that there were "sufficient procedural safeguards in place for meaningful judicial review of a prosecutor's waiver decision." Id. at 375. In that regard, the Court noted that "[a]ll case-specific files should contain a statement of reasons which, upon a defendant's Alvarez motion, the assignment judge may consider in

assessing the prosecutor's conduct, as the statement will show the prosecutor's reasons not to grant a waiver for a particular defendant." Id. at 373. "This judicial backstop ensures that prosecutorial discretion is not unchecked because the assignment judge retains 'ultimate authority' to review the prosecutor's waiver decisions for arbitrariness and discrimination." Ibid.

Here, the State challenges the judge's methodology, asserting "the trial court's review of the prosecutor's Graves Act waiver decision is limited to the case before it for review and does not extend to other similarly-situated defendants." While the State acknowledges that, consistent with Benjamin, "records must be kept by the prosecutor's office so the Attorney General and the prosecutor's office [can] internally regulate compliance with the Attorney General Directive on Graves Act waiver cases," the State contends "these records are not maintained so the trial court . . . [can] perform a comparative analysis or proportionality review of other cases."

This position is markedly different from the approach adopted by the State in Benjamin, where "the State stresse[d] that because all waiver applications . . . pass through the assignment judge, that judge is in the 'best position' to identify discriminatory practices." Id. at 366. Indeed, because the State is obligated to provide the case-specific files containing its statement of reasons to the assignment judge to consider in assessing the prosecutor's conduct, we do not

read Benjamin as prohibiting the assignment judge from maintaining those files and relying on them in evaluating "the prosecutor's waiver decisions for arbitrariness and discrimination" as occurred here. Id. at 373. As Justice Albin pointed out in his dissenting opinion, "[n]othing prevents the judiciary from maintaining [the statements of reasons filed with the Assignment Judge in other waiver cases] in a central file so that historical information will be available to . . . assignment judges." Id. at 377-78 (Albin, J., dissenting). Benjamin only prohibits defendants from gaining access to these "[Directive]-mandated 'case-specific memorializations,'" not assignment judges whose very roles as the "judicial backstop" to "ensure[] that prosecutorial discretion is not unchecked" require such access to make an informed determination. Id. at 373.

The State argues further that the judge's "quasi-proportionality analysis . . . was fatally flawed" because "the prosecutor was unfamiliar with those unrelated cases," "was not given a meaningful opportunity to address the court's concerns based on its comparisons," and "[t]he other-cited cases were poor candidates for comparison." During the December 18, 2018 oral argument, the judge extensively questioned the prosecuting attorney about her office treating "similarly situated people differently," noting, in particular, that her office had granted Graves waivers "to people . . . with . . . more significant prior contact with the system" than defendant. The prosecuting attorney responded she did

16                                                    A-1348-19T1

not "know how those other defendants [were] situated" or "the specific facts of those cases." The judge's decision was not rendered until October 21, 2019. Between oral argument and the issuance of the judge's decision, the prosecutor failed to respond to the judge's concerns, despite the fact that the State had access to "all case-specific memorializations" based on its obligation to maintain "a separate cumulative file" to facilitate Attorney General audits. Benjamin, 228 N.J. at 370 (quoting the Directive at 14). Presumably, the State had access to the same materials considered by the judge.

Additionally, in the judge's written statement of reasons, the judge identified three specific cases upon which he relied to support his conclusion that the prosecutor's denial of the Graves waiver in this case was arbitrary and discriminatory. While the State asserts on appeal that these cases are "poor candidates for comparison," the State neither moved for reconsideration before the trial court, see State v. Puryear, 441 N.J. Super. 280, 293 (App. Div. 2015) (acknowledging that motions for reconsideration are permitted in criminal matters), nor substantively argues on appeal the basis for its bald conclusion. Instead, the State simply describes the judge's analysis "as cursory." On the contrary, we are satisfied that the judge's robust review and analysis were sound, and fulfilled the role contemplated in Benjamin, to "ensure[] that prosecutorial discretion is not unchecked." 228 N.J. at 373. Indeed, while we do not deprecate

17

the seriousness of the crimes, we agree with the judge's implicit finding that "within the constellation of Graves Act cases," this one is "deserving of some leniency." State v. Mello, 297 N.J. Super. 452, 468 (App. Div. 1997).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1348-19T1